June Term,<br>1860.<br><br>GRAVES<br>v.<br>THE STATE.

---

## GRAVES VS. THE STATE.

The presumption of guilt arising from the unexplained possession of property recently stolen, is one of fact and not of law, nor of law and fact combined.

The force of such presumption is not affected by the fact that the line between two states intervenes between the place where property was stolen and that where it was found immediately afterwards, in the unexplained possession of the person indicted for the theft.

A conviction for larceny will not be reversed because the court instructed the jury that such presumption was one of *law*, when it does not appear that the attention of the judge was called to the form of the expression adopted by him, or that any specific instruction on that point was asked by the counsel for the prisoner.

The record in this case not purporting to contain *all* the charge given to the jury this court may presume that in omitted portions of it, the circuit judge properly explained the nature of the presumption, leaving the jury to determine its force.

It is the practice of this court not to review questions involved in instructions given to the jury at the circuit, where it appears that the attention of the circuit judge was not fairly and explictly called to them.

ERROR to the Circuit Court for *Dane* County.

*Graves*, *alias* Davis, was indicted in the circuit court for Green county, for stealing a horse. Plea, not guilty. The venue was changed to the circuit court for Dane county, where the prisoner was convicted. On the trial it appeared

that the horse alleged to have been stolen was turned into the street by the owner, one Hurlburt, in Green county, about dusk, on the 14th of July, 1859, and on the 16th of that month, was in the possession of the prisoner in Lee county, Illinois (one hundred miles distant), who there gave his name as Davis, and exchanged the horse for cattle, stating that he brought the horse from Freeport, and lived near Joliet. When arrested, on the 20th of that month, he told the officer that he got the cattle at Joliet. No further statement of the evidence seems necessary to an understanding of the principles involved in the case.

The court charged the jury as follows: 1. "Did the defendant steal, take or drive away the property of Hurlburt, in the county of Green in this state, as charged in the indictment—is the question for you to decide in this case." "To convict, you must believe that he did, beyond a reasonable doubt." 2. "The law presumes that the person found in the unexplained possession of property recently stolen, is the thief." 3. "If you find that the property, as described, and belonging to the person as charged in the indictment, was stolen within the county of Green, in this state, and the defendant was soon after found in the possession of that stolen property in the state of Illinois, and that possession is unexplained, the law will presume that he is guilty of the theft." To the last two of these instructions the defendant excepted.

The defendant asked the court to instruct the jury as follows: "The admission of the defendant, elicited by the prosecution, that he got the horse in Freeport, Illinois, coupled with the fact that he had possession of the horse, and traded him away, in Ogle or Lee county, Illinois, is insufficient to warrant the conclusion that the defendant had ever been in Green county in this state, and there committed the crime charged against him in this indictment. Nor would proof of the bare fact of possession of the horse in Ogle or Lee county, Illinois, by the defendant, two days after the property had been taken or stolen in Green county, be sufficient to authorize you in finding that the defendant committed larceny of the horse in Green county, in this state. The prosecution should have shown that the defendant had

previously resided, or been seen in this state. Proof of possession of stolen property in another state, is not proof from which it can be inferred that the person having such possession, stole him in this state. By statute, such possession in this state would be evidence of larceny committed by the possessor, in every county where such possession was." But the court refused to give said instruction, or any part thereof, and the defendant excepted to such refusal.

*J. H. Knowlton* and *Samuel Crawford*, for plaintiff in error.

*J. H. Howe*, Attorney General, for the state.

*By the Court*, DIXON, C. J. There can be little doubt that the presumption of guilt arising from the unexplained possession of property recently stolen, is a presumption of mere fact and not of law, nor of law and fact combined, and that the strictest accuracy of language would oblige us so to name it. It is purely an inference of fact to be dealt with by the jury, and not one of law to be applied by the court, and falls strictly within Mr. Starkie's definition of natural presumptions, or presumptions of *mere fact*. It depends wholly upon its own natural force and efficacy in generating belief or conviction in the mind, as derived from those connections which are pointed out by experience, and is altogether independent of all artificial legal relations. For these reasons I was at first strongly inclined to the opinion that it was error for the circuit judge to instruct the jury that the law presumed the possessor, under such circumstances, to be the thief. It seemed to me that, by so doing, he did not leave it to the jury to weigh that fact, after they had found it, as a circumstance tending to establish in their minds the main fact in issue, and upon which they were to pronounce, to-wit: whether the possessor was the real thief; and that he did not leave it for them to say whether, from such recent unexplained possession, they were actually convinced in their consciences of the truth of the charge which was made against him. On the contrary, it appeared to me that the instruction, if to be understood as given by itself, and without comment or explanation, left for their consideration simply the

June Term, 1860.

GRAVES
v.
THE STATE.

October 16.

question whether the possession was recent and unexplained, and this being found in the affirmative, the guilt of the accused followed as a presumption of law, and not as an inference of fact to be drawn by them. Such I deem to be the effect of the charge upon this point, as it stands isolated and alone in the bill of exceptions, and were I satisfied that the bill contains all that was said by the court to the jury upon that subject, and had the objection not been waived by the plaintiff in error, I should still be in favor of reversing the judgment for that reason, notwithstanding the many expressions to be found in the books, where such presumption is treated and spoken of as a presumption of law. For it seems to me evident, on such hypothesis, that the jury were not freely permitted to weigh and determine the force and efficacy of such possession as an evidence of guilt, as it was their province to do, but that the same was taken away from them altogether. The inaccuracy, if it be one, of calling it a presumption of law, finds sanction in the language of many of the courts and writers upon the subject of evidence. It is said that presumptions of this kind may be properly termed legal presumptions, because they have been so frequently drawn under the sanction of legal tribunals, that they are to be viewed as presumptions authorized by the law. *Smith vs. State*, 2 Iredell's Law R., 402; Burrill on Cir. Ev., 445; 1 Greenl. Ev., § 33; 1 Leading Crim. Cases, 360. Even Mr. Starkie, in his treatise, says that many merely natural presumptions "are recognized by the law, and therefore, in one sense, may be termed legal presumptions"; and he instances the one under consideration, that which arises from the recent possession of stolen goods. We cannot, therefore, say that the mere naming it a presumption of law in the charge to the jury was error. No specific instruction was asked by the counsel for the prisoner upon this point, nor does it appear that the attention of the judge was called to the form of expression adopted. Under these peculiar circumstances we think that if the prisoner's counsel desired to review it in this court, one or the other of these things should have been done. It is the constant practice of this court not to review or consider questions involved in the in-

structions given to the jury at the circuit, where, from the course pursued, we can see that the attention of the circuit judge was not fairly and explicitly called to them. If parties desire a reconsideration in this court, they must first see that there has been a consideration in the court below. From anything that appears in this record, the objection here urged was never brought to the notice of the judge, and we cannot review it. For this reason I think the judgment cannot be reversed on this point.

It furthermore appears, from the bill of exceptions, that the whole 'charge is not before us. It only purports to contain selected passages or sentences from it, leaving the residue out entirely. Under these circumstances, and from the peculiar nature of the objection urged, we think that instead of reversing the judgment for error, we would rather be bound to presume that the court, in treating it as a presumption of law, did its whole duty, and in the omitted portions of the charge explained to the jury the nature and extent of the presumption, informed them that it was for them to debate upon and determine its effect, and called their attention to those facts by which it might be weakened and overcome. At least we must suppose that the judge would have done so if requested, which he was not.

We need hardly add that the instruction asked by the counsel for the accused was properly refused. If given, it would have withdrawn from their consideration entirely the question of the unexplained possession of the property, and have declared to them that it did not constitute a circumstance, from which the defendant's guilt might have been inferred. It cannot be said that the power and efficacy of a mere natural presumption or inference of fact is destroyed or weakened because the line between two states or counties intervenes between the place where the larceny was committed and that where the stolen property is found immediately afterwards in the unexplained possession of some third person. Such inferences cannot from their nature be broken down or influenced by mere imaginary or geographical lines, or those forming the boundaries between different states or territories, and they can have no weight either in impairing or strength-

June Term,
1860.

ening the force which experience gives to facts, the existence of which is clearly established.

The judgment must be affirmed.