THE STATE vs. SNELL and another.

CRIMINAL LAW AND PRACTICE. *(1)* EXCEPTIONS. *Statutory provision for review by this court of criminal trial: How exceptions to be stated. (2)* EVIDENCE. PRESUMPTION *from unexplained possession of stolen goods, rebuttable. (3) Instruction in such a case.*

1. In a criminal action, a bill of exceptions, settled by the judge of the court below in the manner usually observed in appeals in civil actions, bringing before this court a voluminous record for the review of rulings scattered through the same, is not a proper compliance with the provisions of sec. 7, ch. 180, R. S. 1858 (sec. 4720, R. S. 1878), by which the accused, after conviction, may allege exceptions and have them reduced to writing "in a summary mode," etc.

2. The facts that stolen goods are found in the possession of an accused person soon after the larceny, and that such possession remains unexplained, create a presumption that such person committed the theft; but this presumption may be *rebutted*.

3. The first count of an indictment against defendants was for larceny, and the second for buying, receiving and aiding in the concealment of the property, knowing it to have been stolen (R. S., secs. 4412, 4417); and two witnesses testified that they found the property, not long after the theft, in defendants' barn, and that defendants arranged with them to carry it out of the state, sell it, and divide the proceeds. There was no explanation of defendants' possession; but there was evidence tending to show that they were not guilty of the larceny. An instruction that if the jury believed the evidence of said two witnesses, they *must* find defendants guilty under the first count, *held* erroneous.

ON EXCEPTIONS from the Circuit Court for *Rock* County.

The case is stated in the opinion.

*William Smith* and *John Winans*, for the defendant.

*H. W. Chynoweth*, Assistant Attorney General, for the state.

ORTON, J. This cause comes to this court on numerous exceptions contained in a bill of exceptions settled and signed in the usual manner by the judge of the circuit court. This manner of bringing criminal causes before this court, for the review of the rulings of the circuit court scattered here and there throughout a voluminous record, is clearly not the one pointed out by sec. 7, ch. 180, R. S. 1858, now standing as sec. 4720, ch. 190, R. S. 1878.

This section provides that any person convicted, " being aggrieved by any opinion, direction or judgment of the court, in any matter of law, may allege exceptions, . . . which exceptions, being reduced to writing in a summary mode, . . . and found conformable to the truth in the case, shall be allowed and signed by the judge."

It is true the language of this section is not the same as to the manner of bringing the case before this court, as in section

8, which provides that the judge shall, upon his own motion, "report the case as far as may be necessary to present any question of law arising therein, . . . which, in the opinion of the judge, shall be so important or so doubtful as to require the decision of the supreme court."

But the mode adopted in this case is certainly not the "*summary mode*" contemplated by the statute, and is to some extent liable to the same objections of practical uncertainty and inconvenience, as when adopted under section 8, which was disapproved by this court in *State v. Anson*, 20 Wis., 652, by the language of the opinion: "We are not to grope our way through a voluminous record in the dark, and examine the scores of questions raised in the court below, to see whether that court has not erroneously decided some one of them."

We are not, however, prepared to express doubt of jurisdiction in this case from the mode adopted, but prefer to regard it as an irregularity which may be waived by the state, however inconvenient to this court, but which cannot be sanctioned. *State v. Pooler*, 37 Wis., 306.

The first count of the information is for larceny in a dwelling house, and the second for buying, receiving and aiding in the concealment of the same property, knowing it to have been stolen.

The defendants were found guilty under the first count, and not guilty under the second. The principal witnesses for the prosecution were Charles Van Epps and Orway Hyatt, who testified, in substance, that they found the stolen property, a few days after the larceny, in the possession of the defendants, and made arrangements with them to carry it out of the state, sell it, and divide the proceeds. These witnesses did not testify that the defendants made any admission of the larceny, or any statement in explanation of how they came into the possession of the stolen property. There was considerable testimony tending to prove, and which, it is claimed on behalf of the defendants, did prove, that one or both of the defendants

were elsewhere than the place where the larceny was committed, and when committed, and therefore could not have committed it.

It is with very great reluctance that we are compelled to disturb the verdict in this case, when it is quite apparent that the defendants and the witnesses Van Epps and Hyatt are so criminally implicated by the evidence. But there is one instruction given to the jury by the learned judge before whom this case was tried, and several times repeated in his otherwise very able charge, which cannot meet with the approval of this court, without doing violence to a most important principle of criminal law, and establishing a dangerous precedent.

The jury were instructed, by language made emphatic by repetition, that " it was incumbent upon the defendants to explain how they became possessed of the property, showing that their possession was innocent, or presumptively they are chargeable with the commission of the burglary and the larceny." The jury are further charged, in connection with this instruction, that, " if the testimony of Van Epps and Hyatt be true, and you so find, you must find the defendants guilty;" and again, " if you are satisfied that these men have told the truth, then you must find the defendants guilty."

These instructions have but one meaning, viz., that if the jury find that the defendants had the possession of the stolen property, as testified to by Van Epps and Hyatt, and such possession was unexplained, they *must* find the defendants guilty. The statement of the law, that the unexplained possession of stolen property soon after the larceny is presumptive evidence that the person so in possession is guilty of the larceny, is certainly strong enough as a *legal* presumption, and not one merely of *fact;* but these instructions together make such possession *conclusive* evidence of the larceny. Even if it be a correct statement of the law, that such unexplained possession is presumptive evidence of the larceny, which, to say the least, is very doubtful (see *Graves v. The State,* 12 Wis.,

591),such a presumption, like other mere presumptions, might be overcome by evidence; but when the jury are told that if they find the defendants so in possession of the stolen property, they *must* find them guilty, then what by the first instruction was a presumption merely (and whether of law or fact is immaterial), becomes an absolute certainty, and an unalterable conclusion.

All other considerations, and all the other evidence in the case, of an *alibi* or of other facts, were thus excluded from the consideration of the jury.

If it had been conclusively shown by the evidence that the defendants were not, or could not have been, actually or constructively present when the larceny was committed, doing or abetting the act, by reason of their being elsewhere, yet the jury are told that they must find the defendants guilty of the larceny, if they were found in such unexplained possession of the property.

The stolen property in this case was found, by the witnesses Van Epps and Hyatt, in the barn and not on the person of the defendants. There might be cases similar to this, where the stolen goods are found in the house or barn, or on the premises of the accused, and so in his possession, when such a possession could not be explained by him, and yet he be innocent of the larceny, and prove himself out of the country, or even prove that some other person actually committed the theft; still these instructions would exclude all such evidence, and, if such possession is unexplained, he must be found guilty of the larceny. We cannot know that the jury in this case would not have found that the defendants did not commit the larceny by reason of their having been elsewhere at the time, if the evidence upon that question had not thus been excluded from their consideration by these instructions.

The common presumption of the law is of innocence, and no evidence which could properly tend to establish it should be excluded from the jury, if legally admissible; and in this

case testimony was given and received upon. this question of *alibi*, and by these instructions excluded.

Because, on the proof of the *alibi*, considered together with the unexplained possession of the property, the jury might have found that the defendants were not guilty of the larceny, it does not follow by any means that they were not guilty as *accessaries*, either before or after the fact. But the learned judge had already instructed the jury that, " so far as respects the second count, I think there is no testimony upon which it could be argued that the defendants are guilty." The defendants were thus hemmed in and shut up, by their unexplained possession of the stolen property, as conclusive evidence of their guilt as the persons who committed the larceny.

These instructions, so given as to be really one instruction, were most clearly erroneous.

Persons guilty of buying, receiving, or aiding in the concealment of stolen property, knowing it to have been stolen, were formerly treated as accessaries after the fact; but now, by statute, they are chargeable with a substantive offense. 2 Bish. on Crim. Law, § 1137. Persons whose will contributes to a felony committed by another as principal, while themselves too far away to aid in the felonious act, are accessaries before the fact. Bish. on Crim. Law, § 673; *Connaughty v. The State*, 1 Wis., 159. When such persons are not either actually or constructively present, acting or abetting in the commission of the felony, or in the conspiracy to commit it, they are not chargeable as principals, but only of the substantive offense of being accessaries, if guilty of any offense. *Ogden v. The State*, 12 Wis., 532; *Miller v. The State*, 25 Wis., 384.

In this case, then, if the only proof was that the defendants were found, soon after the larceny, in the unexplained possession of the stolen property; and that they were so far away at the time that they could not have been guilty of the larceny as principals, would not such unexplained possession, if evi-

dence at all in such a case, be more presumptive of their having been accessaries, either before or after the fact, than of their having committed the act itself, when such latter presumption would be rebutted by proof of an *alibi?* If the second count of the information, and the evidence touching the absence of the defendants from the place and at the time of the larceny, had not been excluded from the consideration of the jury, might not the defendants have been found guilty under the second count, without violence to any legal principle? We do not rule in answer to these questions, but merely state them by way of illustration of the legal principles involved in the above instructions.

*By the Court.* — The exceptions to the above instructions are severally sustained, and the cause is remanded with directions to set aside the verdict as to the first count, and to grant a new trial upon that count.