Palmer vs. Broder.

PALMER, Respondent, vs. BRODER, Appellant.

*December 19, 1890 — January 13, 1891.*

MALICIOUS PROSECUTION: REMOVING REMAINS OF DEAD. (*1, 2*) *Evidence as to good faith in prosecution: Evasion of service: Conveyance of property: Cross-examination.* (*3*) *Removal of remains by direction of coroner.* (*4–6*) *Instructions to jury: Advice of counsel.*

1. In an action for malicious prosecution, evidence that the defendant had, by false representations and by concealment, evaded service of the summons, was admissible as bearing upon the question of her good faith in the prosecution of the plaintiff.
2. The defendant having testified that she was in her house when the officers came there to make service upon her, it was not error to allow it to be shown on her cross-examination that she left the state on the next day and remained away for some days, and that during that time she consulted with lawyers and conveyed her property to her sisters by instruments which were antedated.
3. The sister of a deceased person whose skull had been fractured caused an inquest to be held for the purpose of ascertaining whether his death was caused by criminal means. At her request and under the direction of the coroner a surgeon made an autopsy at the tomb. He removed a portion of the skull, and, after producing it at the inquest, retained it in his possession by direction of the coroner. *Held*, that sec. 4592, R. S., had no application to such a case.
4. In an action by the surgeon against the sister for malicious prosecution of him upon the charge of removing the remains of the deceased, it was not error to refuse to instruct the jury that permission to conduct the autopsy at the tomb was not a license to remove any part of the remains, and that the coroner had no power to license any one to enter the tomb or to remove any portion of the remains without the defendant's consent.

5. The court having charged the jury that the defendant was not liable if she instituted the criminal proceedings on the advice of her attorney or the police magistrate after laying before them all the facts within her knowledge, it was not error to refuse a further instruction that the defendant was not bound herself to know the law and to act at her peril of a mistake of the law.

6. There being evidence that the defendant had failed to state all the material facts within her knowledge to her attorney or to the police justice, upon whose advice she acted, it was not error to charge that such advice was no defense unless honestly sought, on an honest and full statement of the facts known. and honestly acted on by the defendant.

APPEAL from the Circuit Court for *Walworth* County. The following statement of the case was prepared by Mr. Justice CASSODAY:

Paul Broder was a lawyer, and resided at Beloit with the defendant and his other two sisters. December 7, 1881, he was found at the foot of the stairway leading to his office, with a fractured skull. Physicians were called to his assistance, and the plaintiff, a physician and surgeon of long standing at Janesville, was called in consultation, and attended him twice while living, and saw him a few moments after his death, December 14, 1881. The defendant and her sisters took the body, and placed it in Calvary vault, Chicago, where it remained until September 8, 1885, when she and they removed it therefrom to Beloit. ·

Having become convinced that her brother had lost his life by violence, the defendant applied to *Dr. Palmer*, a short time prior to September 10, 1885, to make an autopsy of the body. The doctor declined to make any *post mortem* examination, except under legal direction. Thereupon, and on the day last named, the defendant appeared before A. D. Wickham, a justice of the peace in Janesville, and filed the required affidavit before him for an inquest upon the body of Paul Broder. Justice Wickham thereupon summoned a jury, appointed a constable to attend them, issued a sub-

pœna for *Dr. Palmer* and his son, and they all proceeded to Beloit to hold such *post mortem* examination. On view of the body, the jury were sworn to make such inquest, and thereupon Justice Wickham directed *Dr. Palmer* to make a *post mortem* examination of said body, and to do everything that was necessary in regard to it, to find out how Paul Broder came to his death, and thereupon said inquest was adjourned to September 14, 1885, at the office of said justice, in Janesville. Thereupon the body was taken to a granite tomb in Beloit, which had been prepared by the defendant and her sisters, and there, at the tomb, *Dr. Palmer* and his son, and a student in his office, by the name of Wintermute, in the presence of the sexton and undertaker, made such *post mortem* examination, and removed the top of the head by sawing off the same from the skull entirely around, removing the upper portion in order to expose the contents, and thereupon took the portion so removed with him to Janesville.

The inquest proceeded before said Justice Wickham at Janesville, on the 14th, 16th, and 22d days of September, and the 1st day of October, 1885, during which time the plaintiff was sworn, and testified before said jury and justice, having with him at the time, wrapped in a paper and lying on the table, the portion of the head so removed. The defendant was present at such examination. After the plaintiff had finished his testimony, the said justice directed him to take the bones, and take good care of them, which he did. On the last day of said examination, the jury returned a verdict to the effect that said Paul Broder received injuries, December 7, 1881, not resulting from accident, but that he came to his death by violence and injuries inflicted by some person or persons to the jury unknown, from which injuries he died, December 14, 1881, at Beloit.

On July 24, 1889, the defendant made complaint in writ-

ing, before O. H. Orton, Esq., a police justice in the city of Beloit, charging the plaintiff and others with unlawfully, feloniously, knowingly, and wilfully removing and conveying away from the cemetery and common burying place in Beloit, the remains of said Paul Broder, or a portion thereof, September 10, 1885. The said Police Justice Orton thereupon issued a warrant for the arrest of the plaintiff and others, and the plaintiff was thereupon arrested and brought before said police justice, July 25, 1889, whereupon said proceedings were continued to July 29, 1889, when an examination was had, and at the close thereof the plaintiff was discharged from said arrest, and said proceedings as to him fully terminated.

On August 14, 1889, the plaintiff commenced this action in the circuit court for Rock county, for malicious prosecution, and alleged in his complaint, among other things, in effect, that the defendant had caused said criminal proceedings to be commenced and prosecuted without any probable cause whatsoever, maliciously and falsely charging the plaintiff, by her sworn complaint before said police justice, with having committed the offense mentioned, and also alleging his discharge and the termination and the ending of such criminal proceedings. The answer consisted of admissions and denials, and also justified on the ground that such criminal proceedings had been instituted in good faith upon the advice of counsel. The venue was changed to Walworth county, where the cause was tried, and at the close of the trial the jury returned a verdict against the defendant and in favor of the plaintiff, and assessed his damages at $100. From the judgment entered on that verdict the defendant appeals.

*William F. Vilas*, of counsel, for the appellant.

For the respondent there was a brief by *Winans & Hyzer*, attorneys, and *William Smith*, of counsel, and oral argument by *E. M. Hyzer* and *Mr. Smith*.

CASSODAY, J.  The evidence is voluminous.  Much of it relates to the question whether the defendant, at the time of making the complaint before Police Justice Orton, July 24, 1889, knew that at the time of the *post mortem* examination, September 10, 1885, the plaintiff removed a portion of the head or skull of Paul Broder, and had the same with him when he testified on the inquest, and thereafter took the same to his office and there retained it by direction of the justice, as mentioned in the foregoing statement.  The evidence in that regard was more or less conflicting.  The verdict against the defendant, however, resolved all disputed questions of fact in favor of the plaintiff.  Numerous errors are assigned:

1. Exception is taken because the court allowed evidence on the part of the plaintiff, to the effect that the defendant, by false representations and pretenses made to the sheriff a week or so prior to the commencement of this action, and by concealment, purposely evaded the service of the summons and complaint in this action.  Upon the argument some doubt was expressed as to the relevancy of such testimony, but upon careful consideration we are all induced to hold that it was admissible as bearing upon the question of the defendant's good faith in instituting the criminal proceedings against the plaintiff.  Such evasion of process is clearly admissible on a question of criminal intent.  *Dean v. Comm.* 4 Grat. 541; *Plummer v. Comm.* 1 Bush, 78.  Upon the question of guilty knowledge or intent, courts sometimes go so far as to allow proof of facts apparently collateral and foreign to the main subject in controversy.  1 Greenl. Ev. § 53.  This is an action for malicious prosecution, and the intent with which the defendant instituted the criminal proceedings is very material; and hence any evidence tending to prove that intent was relevant.  1 Greenl. Ev. §§ 33, 37.  Thus it has been held, " in an action to recover damages for an injury to a hired horse by immoderate driving, evidence

is competent to prove that the defendant, immediately after the injury charged, made an assignment of all his property." *Banfield v. Whipple*, 10 Allen, 27. So it has been held that "evidence is competent to prove that the adverse party in an action attempted to bribe a juror at a former trial of the case." *Hastings v. Stetson*, 130 Mass. 76.

2. The defendant, having testified that she was in her house at the times the sheriff and the city marshal were there, Saturday, August 3, 1889, as they testified, to make service, was allowed to testify, on cross-examination by the plaintiff's counsel, to the effect that on the same day she partially wrote a mortgage to one of her sisters, and perhaps an assignment to the other; that the next morning (Sunday) she went to Rockton, four miles south of Beloit, for counsel; that Monday, August 5, 1889, she went from Rockton to Rockford, for counsel, and returned to Rockton on the same day, and on the same day she executed before a notary public at Rockton the mortgage and assignment which were in evidence and dated July 31, 1889, and sent them from there to Beloit to be delivered to her sisters; that she remained in Rockton until the following Wednesday or Thursday; that while there she sent for a lawyer at Janesville to come to Rockton to advise her; that as soon as she got such advice she concluded to have other counsel, and went to Chicago for that purpose. It is claimed by the learned counsel for the defendant that the evidence thus elicited was irrelevant and improper cross-examination. But, upon the principles already stated, we are inclined to think the evidence was relevant, and therefore admissible, and that there was no abuse of discretion in allowing it to be proved on the cross-examination of the defendant.

3. On the question of the defendant's good faith in instituting the criminal proceedings against the plaintiff, the court charged the jury to the effect that they were to consider all the credible evidence in the case bearing upon

the defendant's knowledge and information at that time as to the plaintiff's removal of a part of the remains and having the same present at the inquest and subsequently in his office; that if she knew the plaintiff took the bones in question when the body was examined and had them at the time of the inquest, and did not communicate that fact to her counsel or to Police Justice Orton, then she could not receive the benefit of the advice of counsel; that if there was a misunderstanding between the defendant and the plaintiff as to what she authorized him to do at the tomb, whether she authorized him to remove any part of the remains from the tomb, it was her honest belief as to the authority or permission which she gave him, and not *his* understanding of the matter, which was to be considered. The court also charged the jury that "it is not contended that *Dr. Palmer* was in fact guilty of the charge made against him, and the evidence in this case shows that he was not guilty. Much discussion has been had as to the powers and duties of the coroner at this inquest. I have no doubt that the coroner had power in this case to direct that a portion of the remains be removed and preserved in a safe place, if he deemed it necessary in furtherance of the ends of justice, and especially so if such removal and preservation is considered, by the medical witness directed to make the examination, as reasonably necessary to preserve and perpetuate the evidence of supposed crime." Exceptions were taken to these several portions of the charge, and also for refusing to instruct, in effect, that, if the remains of Paul were deposited in a tomb belonging to the defendant with the consent of his kindred, then no one had the right to enter that tomb and take away any part of the remains, without the defendant's consent, and if they did then it was in violation of her right and a trespass upon her property; that if the license to enter the tomb was limited to the purpose of viewing or examining the remains, and a portion

thereof was removed without the defendant's knowledge or consent, then such removal was also a violation of her rights, and rendered the person removing them a trespasser from the beginning; that the justice of the peace and acting coroner possessed no authority to license any one to enter the tomb belonging to the defendant, in which were said remains, or to remove any portion thereof, except with the defendant's consent; and that permission to do what was necessary to conduct the examination at the tomb would not be a license to remove from the tomb any part of the remains.

These requests to charge the jury seem to have been based upon the section of the statute which punishes any person not lawfully authorized who removes or conveys away any human body or the remains thereof. Sec. 4592, R. S. In considering a similar section of the New York Penal Code, Judge RAPALLO, speaking for the unanimous court, said: " The intent of the statute is manifest. It certainly was not intended to apply to exhumations made by legally constituted public authorities for the purpose of ascertaining whether crime has been committed in producing the death of the person whose body is exhumed. When the exhumation is made not secretly, but publicly on open application to the officer of justice charged with the duty of inquiring into the cause of death of any person whose body is brought within his jurisdiction, it is a total misapplication of the statute against body-stealing to use it for the purpose of imposing its punishment on all persons concerned in the exhumation, in case any proceedings of the officer under whose direction it was made should be found to be irregular." *People v. Fitzgerald,* 105 N. Y. 151. Such we apprehend to be the manifest intent of the section of our statute cited, and fully justifies the charge of the trial court. The instructions so requested and refused seem to have been drawn on the theory that the plaintiff was on trial

Palmer vs. Broder.

for the offense made punishable by that section, instead of the defendant being on trial for maliciously instituting such criminal proceedings without probable cause. The instructions so refused were inapplicable to portions of the evidence, or magnified matters about which there was no dispute, or were otherwise misleading. It is confessed that the defendant engaged the plaintiff to make the autopsy,— that is, the dissection of the body of Paul,— with a view of ascertaining the cause of his death; that she made the affidavit for the inquest; that she knew the *post mortem* examination or the autopsy was to be held; that at the time it took place at the tomb she knew it was to take place there.; that she went there herself, and saw Dr. Palmer there, and shook hands with him; that she knew he was there to make an examination of the body right there at the tomb; that she consented that he should do so; and that she heard he made it right there at the tomb and at no other place. There is no dispute but what the plaintiff was directed to do what he did by the justice and acting coroner. The matters in dispute were fully and fairly submitted to the jury by the trial court.

4. A part of one of the instructions requested and refused contained this clause: "The defendant was not bound herself to know the law and to act at her peril of a mistake of the law." But the court in effect charged the jury that if the defendant fully and fairly laid before the attorney or Police Justice Orton all the facts bearing on the supposed crime which were within her knowledge, and upon such statement was in good faith advised by such attorney or magistrate that there was good ground for instituting such criminal proceeding, and thereupon acted on such advice, this would constitute a defense even though the advice may have been erroneous. "The law deems the advice of counsel so given as equivalent to probable cause and a defense to such an action." The jury could not have been misled in the particular named.

5. Exception is taken because, on the question of such advice, the court charged that, "if it appear that there was any understanding between the parties that advice should be given as a protection to the defendant and without any reference to the correctness of the advice given, then such advice does not constitute probable cause, nor is it a defense. In a word, the advice must be honestly sought upon an honest and full statement of the facts known, and honestly acted on by the defendant." The correctness of this, as a general statement of law, is not questioned, but it is claimed that there is no evidence justifying such imputation upon the fairness of the defendant. But there is evidence tending to prove that the defendant failed to state, either to the attorney who advised her respecting the criminal prosecution or to the police justice, all of the material facts which the evidence on the part of the plaintiff tends to prove that she knew at the time, and some of which she concedes in her own testimony that she then knew.

We find no reversible error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.