RYAN, Plaintiff in error, vs. THE STATE, Defendant in error.

*November 1 — November 15, 1892.*

CRIMINAL LAW AND PRACTICE. (1) *Preliminary examination: Waiver:*
*Pleading.* (2) *Ashland municipal court: Powers of clerk.* (3) *In-*
*structions to jury at beginning of trial.* (4-7) *Evidence: Burglary.*
(8) *Change of venue: Improper remarks by judge.* (9, 10) *Instruc-*
*tions to jury: Presumption from possession of stolen goods: Reason-*
*able doubt.* (11) *Appointment of counsel to defend: Limitation.*

1. After defendant had pleaded not guilty to an information in a mu-
nicipal court, he obtained a change of the place of trial to the circuit
court. In that court he interposed a plea in abatement based upon
the alleged want of a legal preliminary examination. *Held,* that
such plea was properly overruled, under sec. 4654, S. & B. Ann.
Stats., the objection having been waived by the plea to the merits.
The fact that defendant was afterwards again arraigned and again
pleaded not guilty, is immaterial.

2. Sec. 5, ch. 94, Laws of 1889 (providing that the clerk of the municipal
court of Ashland county " may examine on oath all persons apply-
ing for warrants, reduce such examinations to writing and file the
same, and issue all warrants and other process from said court "),
is valid, and the fact that the clerk administered the oath to the
complainant and signed the jurat to the complaint, and that he
signed and issued the warrant of arrest under the seal of the court,
does not render invalid the subsequent examination of the accused
before the judge of said court.

3. It is not error for the trial court to ask the district attorney, in his
opening, to define to the jury the crime in question, if he defines
it correctly; or to instruct the jury correctly, at the commence-
ment of the trial, as to their duties and the fundamental rights of
the defendant.

4. On a trial for burglary, a witness in whose possession one of the
stolen articles was found may describe the man of whom she pur-
chased it and state what he said to her at the time, where the prose-
cution claims that such man was the defendant.

5. Testimony of the defendant, given on his preliminary examination,
that he made the acquaintance of an alleged accomplice when both
were confined in jail, was admitted in evidence, but his statement
that he was in jail for larceny was excluded. *Held,* that defend-
ant could not complain of such exclusion, it being a ruling in his
favor.

6. On the separate trial of one of three persons charged with burglary, there was evidence that they were all together shortly before, and some of them after, the burglary, and that each had some of the stolen goods. *Held*, a sufficient basis for the admission of other evidence of the conduct and movements of any or all of them shortly after the crime was committed.

7. It may be shown that after his arrest the defendant attempted to break jail and escape.

8. On an objection to testimony the trial court said that if defendant took a change of venue to lessen the chances of conviction, he was not inclined to stretch a rule of evidence laid down by the supreme court. The remark being challenged, the judge immediately withdrew it, but said there was need of legislation to prevent persons jointly prosecuted from obtaining separate trials by one or more of them taking a change of venue. *Held*, not a material error.

9. Instructions to the jury to the effect that mere possession of stolen goods is not in itself sufficient evidence on which to convict a person of burglary, but that the unexplained possession of goods recently stolen creates such a presumption against the possessor that a jury might properly convict him if such possession and the other circumstances connected therewith satisfied them of his guilt beyond a reasonable doubt,— are *held* not erroneous.

10. An instruction stating, as a definition or test of what is a reasonable doubt, that the jury should require equally as strong and conclusive evidence of defendant's guilt as they would require to induce them to enter upon the great and most important acts of their lives, always remembering that their verdict must be the truth, is *held*, though not wholly satisfactory, not to be erroneous.

11. The validity of a judgment in a criminal case is not affected by the fact that the court in appointing counsel to defend the accused limited such appointment to that court and to the trial term.

ERROR to the Circuit Court for *Ashland* County.

On May 12, 1891, an information in due form was filed in the municipal court of Ashland county by the district attorney against *Charles Ryan*, the plaintiff in error, and two others, charging them jointly with having committed the crime of burglary, by unlawfully and feloniously breaking and entering the dwelling house of one Edward Welsh, in that county, in the night-time of March 13, 1891, with intent then and there to commit the crime of larceny. On the

same day *Ryan* was arraigned and pleaded not guilty to the charge in the information, and on his affidavit of poverty the court appointed G. H. McCloud, Esq., an attorney of the court, to defend him. *Ryan* also filed his affidavit of the prejudice of the judge of the municipal court, and thereby obtained a change of the place of trial to the circuit court for Ashland county. Such change secured *Ryan* a separate trial.

After the case reached the circuit court, Rublee A. Cole, Esq., an attorney of that court, appeared therein in behalf of *Ryan*, and filed the affidavit of the latter that he was too poor to employ counsel, and praying that Mr. Cole be appointed to defend him. Because Mr. McCloud had been appointed to do so by the municipal court, the circuit court refused to appoint Mr. Cole, and made an order reappointing Mr. McCloud for that purpose, limiting such appointment to that court and term. From that time, however, Mr. Cole participated in the defense of *Ryan* as his counsel, and appears in this court as such.

When the cause came on for trial, a plea in abatement on behalf of *Ryan* was interposed to the information, based upon the allegations that the original complaint was made before the clerk of the municipal court, and the warrant for the arrest of *Ryan* and his codefendants was signed and issued by such clerk. Because of such procedure it is claimed that there was no legal preliminary examination of the accused. The court overruled the plea because it was not interposed until after *Ryan* had been duly arraigned in the municipal court, and had pleaded to the merits.

The trial of *Ryan* resulted in his conviction. The court overruled his motions in arrest of judgment and for a new trial, adjudged him guilty of the offense charged, and sentenced him to a term of imprisonment in the state prison. He has sued out a writ of error to obtain a review and reversal of the judgment.

The cause was submitted for the plaintiff in error on the brief of *George H. McCloud*, attorney, and *Rublee A. Cole*, of counsel, and for the defendant in error on the brief of the *Attorney General* and *J. M. Clancey*, Assistant Attorney General.

LYON, C. J. I. The plea in abatement, based on the alleged want of a legal preliminary examination of the plaintiff in error, was properly overruled, for the reason given by the trial court. In the municipal court he pleaded to the information "Not guilty." When he interposed his plea in abatement in the circuit court the plea of not guilty (which, of course, was a plea to the merits) was in full force, no leave having been granted or asked to withdraw it. The statute provides that " no failure or omission of such preliminary examination shall in any case invalidate any information in any court, unless the defendant shall take advantage of such failure or omission, before pleading to the merits, by a plea in abatement. S. & B. Ann. Stats. sec. 4654.

Such plea in abatement might also have been properly overruled on the merits. It appears from the record that the original complaint against *Ryan* and those prosecuted with him was made to the municipal court; that process for their arrest was issued by that court; and that their examination on such complaint was had before the judge of that court. In the statute creating the municipal court of Ashland county it is provided that the clerk of such court " may examine on oath all persons applying for warrants, reduce such examinations to writing and file the same, and issue all warrants and other process from said court." Laws of 1889, ch. 94, sec. 5. These acts of the clerk are all under the supervision of the judge of the court and subject to his control. In a certain sense they are the acts of the judge or the court. We perceive no valid constitu-

Ryan vs. The State.

tional or other objection to the above statute; hence we think the fact that the clerk administered the oath to the complainant, and signed the jurat to the complaint, and that he signed and issued the warrant, under the seal of the court, for the arrest of the accused, does not render invalid their subsequent examination before the judge of the municipal court, who held them for trial.

It is stated in the bill of exceptions that, after the plea in abatement was overruled, *Ryan* was again arraigned and again pleaded not guilty. This second arraignment and plea were entirely superfluous, and no effect whatever can be given thereto.

II. It appears by the bill of exceptions that when the district attorney was opening the case for the prosecution to the jury the court suggested to him " that he explain to the jury what a statutory breaking is, and what burglary is, in the eye of the law," and that the district attorney thereupon " defined the meaning of those terms according to the statute." The remarks of the district attorney in response to the suggestion of the court are not preserved in the record. It further appears that before any testimony was introduced, the court, in somewhat extended remarks, which are preserved in the bill of exceptions, admonished the jury of their duties, and of the rights of persons on trial charged with crime. The above procedure is assigned for error, not because either the district attorney or judge laid down any bad law, or said anything improper, but because the same was not in the course of orderly judicial procedure in criminal trials.

We are aware of no law which prohibits the trial court, in a criminal case, from asking the district attorney, in his opening, to define to the jury the crime under consideration. And if, as in this case, he defines it correctly, we think it is not error. Neither do we think it error if the court sees fit, at the commencement of the trial, to instruct

the jury of their duties, and of the fundamental rights of the person to be tried, provided he correctly states such duties and rights, as we think he did in this case.

III. Numerous exceptions on behalf of the plaintiff in error were taken on the trial to the rulings of the court on objections to the admission of testimony. Some of them are of no importance, and will not be further referred to. Others will now be briefly noticed.

1. The court allowed a female witness, named Liston, in whose possession was found a dress stolen from Welsh's house when the burglary charged in the information was committed, to describe the man of whom she testified she purchased such dress, and what the man said to her when she purchased it. The prosecution claims that the man from whom she received the dress was *Ryan.* The description the witness gave of the person in question was competent, in connection with the other testimony in the case, to go to the jury on the question whether such person was or was not *Ryan.* If it was he, then, of course, what he said to the witness was competent testimony against him. We think the testimony was properly admitted.

2. The court admitted in evidence the testimony given by *Ryan* on his examination before the municipal judge, in which he testified that he made the acquaintance of one of his codefendants when both were confined in jail. *Ryan* also then testified that he was in jail for larceny, and that he knew nothing of the burglary in Welsh's house. The court excluded his statement that he was in jail for larceny, and admitted the balance of his testimony on such examination. We think the excluded portion of such testimony was admissible, but its rejection was a ruling in favor of *Ryan,* of which he cannot be heard to complain.

3. Proof that the municipal judge was not present when the original complaint was made against *Ryan* and his codefendants, and when the warrant for their arrest was issued,

was properly rejected. All objections to the want of a valid preliminary examination having been waived by *Ryan* by pleading to the merits without objection to the validity of the examination, it is entirely immaterial whether the judge was or was not present at the times mentioned.

4. The conduct and movements of the three persons charged with the burglary on the next morning after it was committed, and the connection of each of such persons with the goods stolen from the house of Welsh when the burglary was committed, were allowed to be proved. There was testimony tending to show that the three accused parties were together recently before the burglary was committed, and some of them were after, and that each of them had some of the goods stolen from Welsh's house. We are of the opinion that such testimony was a sufficient basis for the admission of other testimony tending to show the conduct and movements of any or all the accused parties recently after the crime was committed. Under the circumstances which the testimony tends to prove, such recent conduct and movements were, in some sense, really parts of the *res gestæ*, and properly provable as such.

5. Testimony was also admitted tending to show that after his arrest on the charge contained in the information *Ryan* attempted to break jail and escape from custody. The testimony was admissible, on the authority of *Palmer v. Broder*, 78 Wis. 483, and the authorities cited in the opinion by Mr. Justice CASSODAY.

6. It is claimed that under many rulings of the court, which are referred to by folios in the argument of counsel, but not specially stated or discussed therein, much testimony was admitted which, while it might have been admissible had the three persons charged in the information been tried together, was not admissible against *Ryan* when tried separately from the others. The portions of the bill

of exceptions thus referred to have been examined with
care, and we find no reversible error in any of the chal-
lenged rulings.

IV. On an objection to testimony, the trial judge said that
if *Ryan* took a change of venue for the purpose of lessening
the chances of his being convicted, he was not inclined to
stretch a certain rule of evidence supposed to have been
laid down by this court. When the remark was challenged,
the judge at once withdrew it as improper, but said there
was need of legislation to prevent persons jointly prosecuted
from obtaining separate trials by one or more of them tak-
ing a change of venue. We do not think this circumstance
is a reversible error. It would, indeed, be a peculiar case
which would render necessary the reversal of a judgment
because of a supposed improper remark by the judge in the
presence of a jury, which was immediately recalled and
repudiated in the same presence. We do not regard this
as such a case.

V. Nearly the whole charge to the jury (and it is quite
lengthy) is excepted to by paragraphs or sentences. The
detached portions thereof which are discussed in the argu-
ment cannot be fully or properly understood without quot-
ing more of the charge than it is deemed advisable to in-
sert here. We content ourselves, therefore, with a state-
ment of the substance thereof, in so far as its accuracy
is specifically challenged in the argument. The objections
to it, so far as they seem to require notice, are to what the
judge said therein concerning the presumption arising from
finding property, recently stolen, in possession of the ac-
cused, and to his definition or explanation of a "reasonable
doubt." As to the presumption, the charge was, in sub-
stance, that the mere possession of stolen goods is not in
itself sufficient evidence on which to convict a person of
burglary, yet such possession is a fact to be considered in
connection with the other facts proved tending to show the

accused guilty of the burglary which immediately preceded the larceny; and, further, that the unexplained possession of stolen property recently after the larceny thereof creates a presumption against the possessor, calling upon him for explanation as to how he obtained the property. That the court intended that such possession created a presumption of fact merely, liable to be rebutted, appears from what immediately follows in the charge, which is to the effect that such possession creates such a presumption against the possessor that a jury might properly convict him of the larceny if the possession, and other circumstances connected therewith, satisfied them of his guilt beyond a reasonable doubt. It would seem that the charge is in substantial accord with the doctrines affirmed by this court in *Graves v. State,* 12 Wis. 591; *State v. Snell,* 46 Wis. 524; and *Ingalls v. State,* 48 Wis. 647. It is also in accord with the case of *Stuart v. People,* 42 Mich. 255, relied upon by the defense. It is said in the Michigan case that "possession alone, unsupported by other facts indicative of guilt, would not, we think, be *prima facie* evidence that the respondent committed the burglary. When taken and considered with other evidence in the case, it might be sufficient to satisfy the jury."

On the subject of reasonable doubt there is some confusion in the language of the charge. Yet we think the jury must have understood the court to instruct them that they could not properly convict *Ryan* unless the evidence satisfied them of his guilt beyond a reasonable doubt,— that is, to a moral certainty; and that they should require equally as strong and conclusive evidence of his guilt as they would require to induce them to enter upon the great and most important acts of their lives, always remembering that their verdict must be the truth. There are cases which condemn the above definition, or rather test, of what is a reasonable doubt. One of these is *Leonard v. Territory,* 2

Wash. Terr. 381, which was a capital case. The court said: " A reasonable doubt for a trial juror is such a doubt as a man of ordinary prudence, sensibility, and decision, in determining an issue of like concern to himself as that before the jury to the defendant, would allow to have any influence whatever upon him, or make him pause or hesitate in arriving at his determination." In that case the trial court instructed the jury that " the proof is deemed to be beyond a reasonable doubt when the evidence is sufficient to impress the judgment of ordinarily prudent men with a conviction on which they would act without hesitation in their most important affairs." Although the appellate court disapproved this instruction, it said that it was correct " if tested by the definition of reasonable doubt given by most of the law writers and courts." Several cases which so hold are cited in the note to the report of the *Leonard Case* in 7 Pac. Rep. 872. Neither of the tests which have thus received judicial sanction is very clear or satisfactory. That adopted in the present case seems to us the more practicable and reasonable. While we would be better satisfied had it been omitted from the charge, we are not prepared to condemn it as erroneous.

VI. Several instructions proposed on behalf of the plaintiff in error were refused. They are to the effect that from the mere possession of stolen goods burglary cannot be inferred; that such possession of itself does not prove or tend to prove that the possessor was guilty of burglary, and was not *prima facie* evidence of the fact. We have already held that the court instructed correctly on this subject in the general charge. Such charge seems to contain all that was proper to be given in the proposed instructions; hence the refusal to give them was not error.

VII. We see no good reason why the court, in appointing counsel to defend a person charged with crime, may not limit such appointment to that court and to the trial

term, as was done in this case. But, if such limitation was not authorized by law, it cannot possibly affect the validity of the judgment.

The record discloses no reversible error, and the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.