PIallows, J.
The defendant did not testify or offer any testimony and relies on his presumption of innocence and his claimed insufficiency of the evidence. The evidence against him is entirely circumstantial, but this is not unusual in a criminal case. Not many criminals are caught in the act like a child with his hand in the cooky jar. Circumstantial evidence may be and often is stronger and as convincing as direct evidence. The same rule of the burden of proof in a criminal case applies to circumstantial evidence as to positive, direct evidence; and in both cases the evidence *135 must be sufficiently strong and convincing to establish the facts of guilt beyond a reasonable doubt in the mind of the trier of the facts. Circumstantial evidence has its inherent defects but human testimony, too, has its infirmities. A notion exists that all circumstantial evidence should be viewed with distrust because it can establish, at most, only a possibility of guilt. Such an opinion, based on the theory that circumstantial evidence can only be the basis for conjecture and is impotent to correctly indicate or to satisfactorily establish the facts upon which guilt must rest to the required degree of certainty, is unwarranted. It is true that circumstantial evidence in many cases may be so weak as not to meet the standard of proof. But circumstantial evidence may be and often is stronger and more satisfactory than direct evidence; Schwantes v. State (1906), 127 Wis. 160, 106 N. W. 237, and Spick v. State (1909), 140 Wis. 104, 121 N. W. 664, which discuss the subject at length. The companion view that to justify a conviction on circumstantial evidence it is necessary to exclude every possible hypothesis of innocence has been criticized as erroneous by Wharton, Criminal Evidence (9th ed.), p. 12, sec. 10, and by this court in Schwantes v. State and Spick v. State, supra.
Cases cited by the defendant do not hold otherwise. Kollock v. State (1894), 88 Wis. 663, 60 N. W. 817, states the principles applicable to circumstantial evidence to be: 1. That each of the several circumstances upon which the conclusion of guilt necessarily depends must be proved beyond a reasonable doubt; and 2. they must not only point with moral certainty to the guilt of the defendant, but must exclude to a moral certainty every other reasonable hypothesis. The rule does not require the exclusion of all other possible hypotheses or even probabilities, but only reasonable hypotheses of innocence.
Moral certainty is a reasonable certitude or conviction based on convincing reasons and excludes all doubts that a *136 contrary or opposite conclusion can exist based on any reasons. One having such a state of mind is said to be convinced beyond a reasonable doubt. Such state of mind is more than an opinion, or an ordinary conviction. It is a higher state of conviction called moral certitude, which is the firm assent of the mind to one of two contraries without any reasonable fear of error, i.e., beyond a reasonable doubt. In criminal cases such moral certainty is not of the absolute or metaphysical order, in which the opposite conclusion is objectively an absolute impossibility as, for example, the arithmetical truth that two plus two makes four; and need not be as absolute as the truths based on the physical laws of nature. The type of reasonable certitude required in criminal cases is moral certainty relating to the affairs of human conduct and grows out of informed experience with the common ways (mores) of man. It is based upon the certain constancy and uniformity in the free conduct of humans under given conditions or motives. Based upon long experience with the actions and motives of human nature, certain inferences of conduct may be drawn from various circumstances to a moral certainty. This is not to say that exceptions and possibilities may not exist but such possibilities in themselves do not prevent a person from forming a reasonable conviction beyond a reasonable doubt or to a moral certainty of the truth of a fact. This degree of certainty required to sustain a criminal conviction may be attained upon circumstantial evidence as well as upon direct evidence.
Such is the meaning of the language in Colbert v. State (1905), 125 Wis. 423, 104 N. W. 61, cited by the defendant, that all the facts necessary to warrant a conviction on circumstantial evidence must be consistent with each other and with the main fact sought to be proved and the circumstances taken together must be of a conclusive nature leading on the whole to a satisfactory conclusion and producing in effect a reasonable and moral certainty that the accused and *137 no other person committed the offense charged; and of State v. Bradley (1954), 267 Wis. 87, 64 N. W. (2d) 187, citing the Kollock Case, supra. The defendant relies on the language in State v. Hall (1955), 271 Wis. 450, 73 N. W. (2d) 585, wherein the court, after quoting from the Schwantes Case, supra, stated (p. 453) : “ ‘. . . circumstantial evidence must be sufficiently strong to exclude every reasonable theory of innocence’ ” applied the rule and stated (p. 453) : “It is not enough that the evidence is consistent with the state’s hypothesis of guilt; it must be inconsistent with any hypothesis of innocence.” The omission of the word “reasonable” before hypothesis was not meant to change the rule so as to require the evidence to exclude an unreasonable hypothesis of innocence or a mere possibility thereof.
The trial judge found he was convinced of the defendant’s guilt beyond a reasonable doubt. On this appeal it is our duty to determine whether the circumstantial evidence is sufficient to sustain the finding of the trial court. State v. Schweider (1959), 5 Wis. (2d) 627, 94 N. W. (2d) 154. This court does not retry the case on the facts in the record to determine if each of its members is convinced of the defendant’s guilt beyond a reasonable doubt. An appellate court cannot function as a trial court or as a jury. Its duty and right is to determine whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant’s guilt beyond a reasonable doubt. State v. Hanks (1948), 252 Wis. 414, 31 N. W. (2d) 596; Parke v. State (1931), 204 Wis. 443, 235 N. W. 775, and cases cited therein. See also State v. John, ante, p. 1, 103 N. W. (2d) 304. The rule is no different when the trial court is the trier of the facts. State v. Evjue (1949), 254 Wis. 581, 37 N. W. (2d) 50.
There is no question that both the Struck and the Mitchell filling stations were burglarized. Both front doors were *138 jimmied with an instrument leaving marks as if a screw driver had been used. Entrance to Mitchell’s station, however, was finally gained through a side window where the blue paint was scuffed. The question is, Did the defendant commit the burglaries? Struck identified the screw driver, the four-way wheel wrench and the tire iron found in the defendant’s car and the tires found at the cottage as his and as being missing from his filling station immediately after the burglary. The sufficiency of the identification is challenged. The screw driver was positively identified by the way the end was worn down, the four-way wrench by a bent arm, and the tire iron as a “Craftman” make with its end pounded over. The tires were identified by size, quality, and brand name. Struck kept no record of the tire serial numbers and therefore could not identify the tires by that method. True, these identifications were not as positive as personalized monograms on the tools would have made them; and they might not distinguish the tools from every existing tool of the same class. Such an absolute degree of proof is not required to determine property as one’s own. But, if this witness can be believed and there is no evidence even tending to show why he should not be, such identification based on similarities of distinguishing features was sufficient in view of the other circumstances. Fowle v. State (1879), 47 Wis. 545, 2 N. W. 1133. The same may be said of the new tires found hidden at the cottage occupied by the defendant. Mitchell positively identified a screw driver found in the defendant’s car as one he purchased from Arnold Grubel and as being a “snap-on tool” nicked on the edge by one of his helpers while pounding out a wheel bearing. Mitchell had used the screw driver many times and it was the type used by garage repairmen and was stained with oil and grease.
The four new batteries, two 12-volts and two 6-volts, were sufficiently identified by witness Seifert as his by *139 make, model number, the type of caps, and three being dry batteries and one being a wet battery. One windshield wiper in a carton was identified as a winter-type wiper with the price mark on the box in Seifert’s handwriting. The batteries and wipers proved nothing as to the guilt of the defendant in the Struck and Mitchell burglaries except that the property was stolen and found at the cottage occupied by the defendant where stolen tires involved in the Struck burglary were found. The defendant was not convicted of larceny or the related burglary involving the batteries and the windshield wipers on this evidence and correctly so. The defendant’s control of the cottage was not so exclusive as to raise any inference of guilt from his possession of stolen property. But it is of some importance and part of the circumstances on the Struck larceny count that the stolen tires from the Struck service station were found at the cottage.
Mere possession of stolen property raises no inference of guilt, but Wisconsin from early times has followed the rule that unexplained possession of recently stolen goods raises an inference of greater or less weight, depending upon the circumstances, that the possessor is guilty of the theft and also of burglary if they were stolen in a burglary. Such inference being in the nature of a presumption of fact calls for an explanation of how the possessor obtained the property. Such presumption is not conclusive and may be rebutted. Graves v. State (1860), 12 Wis. 659 (*591); State v. Snell (1879), 46 Wis. 524, 1 N. W. 225; Ryan v. State (1892), 83 Wis. 486, 53 N. W. 836. In Ingalls v. State (1880), 48 Wis. 647, 4 N. W. 785, it was pointed out that the nature of the possession of the stolen goods is important, whether it is open and unconcealed and whether the goods are such as the person found in possession thereof would probably be possessed of in an unlawful way. This is what is meant by an inference of greater or less weight depending upon the circumstances. The rule of unexplained *140 possession of recently stolen goods has been followed and discussed in Winsky v. State (1905), 126 Wis. 99, 105 N. W. 480; Montello v. State (1922), 179 Wis. 170, 190 N. W. 905; Vejih v. Redford (1923), 182 Wis. 311, 196 N. W. 228.
The defendant does not contest the correctness of this rule and admits in his brief that if no explanation had been made by him, the inference arising from unexplained possession of stolen articles (assuming sufficient identification) would be sufficient to support his conviction of the burglaries and the larcenies. However, the defendant claims he made an explanation which the state’s evidence was not sufficient to prove false. The defendant stated to the arresting officer that the screw drivers, tire iron, and four-way wheel wrench were in his car when he purchased it from the Phelps Auto Company. This statement was not given under oath and no explanation by the defendant was made at the trial. Witness Arnold Grubel testified he took the defendant to Phelps, Wisconsin, in June, 1958, and that the 1951, 88 Olds, four-door sedan which the defendant purchased that day was the one Grubel saw the defendant driving a few hours before his arrest. Grubel also testified that one night, probably in July, when he was driving the defendant to the cottage in the defendant’s Olds, a tire went flat and the only tools the defendant had in the car at that time were an L-shaped tire iron and a jack.
If the defendant was not driving the 1951 Olds he purchased in June, then for his unsworn explanation to be true, one would have to assume the criminal who burglarized the Struck and Mitchell stations put the stolen tools in a 1951, 88 Olds, four-door sedan and sold the car almost immediately after the burglary to the Phelps Auto Company and the defendant on the same day or the following day purchased the car from the Phelps Auto Company. By some *141 coincidence the thief’s car would have to have been a seven-year-old 1951, 88 Olds, four-door sedan the same year, make, and model as the one the defendant bought some three months before. Such an hypothesis is not reasonable or credible. This possibility or hypothesis is actually not claimed by the defendant as he never stated when but only where he purchased the Oldsmobile he was driving at the time of his arrest. The vague and unsworn explanation of the defendant does not rebut the presumption arising from his exclusive possession of stolen property.
As additional evidence supporting the presumption of guilt, the falsity and the weakness of the explanation could be considered. Fowle v. State, supra. Under the Ingalls Case, supra, the court could also consider that an ordinary citizen does not normally have five screw drivers under the front seat of his car, that some of the tools were of the type generally found in public garages and not ordinarily in private cars, and part of the fruits of the Struck burglary —the two Mobil tires — was found hidden in the crawl space under the cottage occupied by the defendant, along with other stolen batteries, one of which was wrapped in burlap and placed inside a tire. While these facts and circumstances, standing alone, are not sufficient to prove guilt, they are suspicious and of an incriminating nature and may be considered in view of the other circumstances. Vejih v. Redford, supra.
The trial court correctly held that no inference as to burglary arose from the possession of the tires, the windshield wipers, and the batteries because they were not proved to be within the exclusive possession of the defendant at the cottage. There was some evidence of other persons staying at the cottage for short periods of time in July and August. Likewise, the Oxfords with the blue paint were not sufficient evidence, although there was some evidence they were used *142 in the Mitchell burglary but it was not proved that the shoes belonged to the defendant. However, when the burglary and the articles stolen therein are proved and part of the loot or fruits of the burglary is found in the unexplained and exclusive possession of the accused, it is not required that the rest of the fruits of the burglary must be in his exclusive possession to sustain the conviction of larceny therefor.
The written decision of the trial judge shows he carefully considered the evidence and gave the defendant the benefit of every doubt and presumption to which he was entitled. The defendant pleaded not guilty and chose to stand on his presumption of innocence and on what he considered the weakness of the state’s evidence against him. This he had a right to do and no inference of guilt should or may be drawn. However, the circumstantial evidence was sufficiently strong and credible to convince the trial court beyond a reasonable doubt of the defendant’s guilt on four counts and in our judgment was sufficient to sustain the finding of the trial court.
By the Court. — Judgment affirmed.