James F. SCARPACI and Linda L. Scarpaci, Plaintiffs-Respondents,

v.

MILWAUKEE COUNTY, Joseph LaMonte, Chesley P. Erwin, M.D., and Elaine Samuels, M.D., Defendants-Appellants.

Supreme Court

*No. 77–488. Argued December 3, 1979.—Decided June 3, 1980.*
(Also reported in 292 N.W.2d 816.)

664

For the appellants the cause was argued by *Dean M. Horwitz,* assistant corporation counsel, with whom on the brief was *Robert P. Russell,* corporation counsel.

For the respondents there was a brief by *Timothy J. Aiken* and *Panos, Samster, Domnitz, Aiken & Peckerman* of Milwaukee, and oral argument by *Timothy J. Aiken.*

SHIRLEY S. ABRAHAMSON, J. This appeal is from an order of the circuit court for Milwaukee county which denied defendants' motion to dismiss plaintiffs' second amended complaint, the plaintiffs, James and Linda Scarpaci, brought this action charging wrongful performance of an autopsy on the body of their deceased child, Nicole Scarpaci, the defendants, Milwaukee county and individuals employed by Milwaukee county,[1] moved to dismiss the complaint on the ground that it

---

[1] The complaint alleges that plaintiffs are in doubt as to which of the named defendants ordered the autopsy. Defendant Chesley P. Erwin is Milwaukee County Medical Examiner; defendant Joseph LaMonte is Milwaukee County Deputy Medical Examiner; and defendant Elaine Samuels is Milwaukee County Associate Medical Examiner.

The plaintiffs gave notice of injury pursuant to sec. 895.43,

failed to state a claim upon which relief can be granted, arguing that when a medical examiner conducts an autopsy, he or she is performing a quasi-judicial function and is, therefore, immune from tort suit by virtue of sec. 895.43(4), Stats.

The circuit court denied the motion, holding that "the fallacy in the defendants' motion to dismiss at this time is that judicial immunity is not so broad as to constitute immunity [in] any kind of circumstance." We conclude that the complaint states a claim against the defendants upon which relief can be granted and, accordingly, we affirm the order.

## I.

Because this case is here at the pleading stage, the relevant facts are those stated in the complaint. The complaint lists four "causes of action" and also an "alternative cause of action."

In the "first cause of action" the complaint alleges that on or about February 12, 1976, the Milwaukee county medical examiner's office conducted an autopsy on Nicole Scarpaci. It is alleged that not only was the autopsy done without the parents' permission, but it was done after the parents had made it known to the defendants that the parents did not wish an autopsy performed. The complaint then recites:

"Said autopsy was unauthorized and in violation of Wisconsin Statutes 979.121 in that there was no reason to believe from the surrounding circumstances that a situation was present where a coroner's inquest might be had as provided in Wisconsin Statutes 979.01."

The "first cause of action" ends with the allegation that as a result of the acts alleged, plaintiffs suffered

Stats., and notice of claim. The Milwaukee County Board of Supervisors disallowed the claim.

damages for the intrusion and defiling of the body of their deceased child, intrusion of their rights of care and burial of their child, extreme disabling emotional distress, and great outrage upon their sensitivities and emotions.

The "second cause of action" incorporates the allegations set forth above and asserts that defendants' conduct in performing the autopsy was unreasonable and not in good faith.

The "third cause of action" incorporates all previous allegations and states that the defendants' conduct was extreme and outrageous and constituted a willful and wrongful invasion of their right to provide a proper burial for their child. Despite the inclusion of the term "willful" in one paragraph of the "third cause of action," another paragraph in that "cause of action" alleges doubt as to whether the actions of defendants were negligent or intentional and states that for purposes of that cause of action, the defendants' conduct is alleged to be negligent. The plaintiffs claim that the autopsy caused the body of the plaintiffs' child to be defiled, which resulted in great outrage upon the sensibilities and emotions of the plaintiffs, great emotional distress and severe disabling response.

The "fourth cause of action" incorporates all previous allegations, recites that defendants acted unreasonably, negligently and not in good faith in performing the autopsy and also in failing to notify the plaintiffs of the autopsy, and asserts that the plaintiffs suffered an extreme disabling emotional response, which was associated with physical injuries.

The complaint names all of the defendants in the above-described allegations and requests that they be jointly and severally liable for compensatory damages of $125,000.

The "alternative cause of action" is asserted against only the individual defendants, not defendant Milwaukee

county, and the relief requested is $125,000 compensatory damages and $125,000 punitive damages. This part of the complaint incorporates all the foregoing allegations, again alleges doubt as to whether the defendants' acts were negligent or intentional, and states that for purposes of this cause of action, the defendants are alleged to have *intentionally* caused emotional distress, to have engaged in extreme and outrageous conduct, causing great outrage upon the plaintiffs' sensitivities and emotions and great emotional distress and severe disabling response. In addition, the punitive damages claim is coupled with an allegation that the individual defendants' conduct was in reckless disregard of the plaintiffs' rights.

The obvious reason the alternative cause of action is not asserted against the defendant Milwaukee county is that the statutes provide that no suit may be brought against a political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees. Sec. 895.43(4), Stats.

The defendants' motion to dismiss the complaint for failure of the pleading to state a claim upon which relief can be granted[2] was based on the ground that the defendants are immune from suit under sec. 895.43(4), Stats.[3] This defense is properly presented by this mo-

[2] Sec. 802.06(2)(f), Stats., provides:

"Every defense, in law or fact . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (f) failure to state a claim upon which relief can be granted . . . ."

[3] Sec. 895.43(4), Stats., provides:

"No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes nor may any suit be brought

tion. *Lister v. Board of Regents,* 72 Wis.2d 282, 299, 240 N.W.2d 610 (1976).

The motion to dismiss for failure to state a claim, like the previously used demurrer, tests the legal sufficiency of the claim. The facts pleaded and all reasonable inferences from the pleadings are admitted to be true, but only for purpose of testing the legal sufficiency of the claim, not for the purpose of trial. The pleadings are to be liberally construed with a view to substantial justice to the parties. Sec. 802.02(6), Stats.[4]

This court recently set forth the following test to be applied when the issue is the sufficiency of the complaint:

"For the purpose of testing whether a claim has been stated pursuant to a motion to dismiss under sec. 802.06 (2)(f), Stats., the facts pleaded must be taken as admitted. *Anderson v. Continental Insurance Co.,* 85 Wis. 2d 675, 683, 271 N.W.2d 368 (1978). The purpose of the complaint is to give notice of the nature of the claim; and therefore, it is not necessary for the plaintiff to set out in the complaint all the facts which must eventually be proved to recover. *Id.* at 683–84. The purpose of a motion to dismiss for failure to state a claim is the same as the purpose of the old demurrer—to test the legal sufficiency of the claim. *Hartridge v. State Farm Mutual Automobile Ins. Co.,* 85 Wis.2d 1, 4–5, 271 N.W. 2d 598 (1978); *Anderson, supra,* at 683. Because the pleadings are to be liberally construed, a claim should be dismissed as legally insufficient only if 'it is quite clear that under no conditions can the plaintiff recover.' Clausen and Lowe, *The New Wisconsin Rules of Civil*

against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions."

[4] Sec. 802.02(6), Stats., provides:

"CONSTRUCTION OF PLEADINGS. All pleadings shall be so construed as to do substantial justice."

*Procedure,* Chapters 801–803, 59 Marq. L. Rev. 1, 54 (1976). The facts pleaded and all reasonable inferences from the pleadings must be taken as true, but legal conclusions and unreasonable inferences need not be accepted. *Hartridge, supra,* at 4–5.

"Sec. 802.06(2)(f), Stats., on which the motions to dismiss were based, is similar to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A claim should not be dismissed under the Wisconsin rule or the federal rule unless it appears to a certainty that no relief can be granted under any set of facts that plaintiff can prove in support of his allegations. *See,* Wright and Miller, 5 *Federal Practice and Procedure,* sec. 1215, p. 113; *Conley v. Gibson,* 355 U.S. 41, 47–8 (1957)." *Morgan v. Pennsylvania General Insurance Co.,* 87 Wis.2d 723, 731–32, 275 N.W.2d 660 (1979).

*See also, General Split Corp. v. P & V Atlas Corp.,* 91 Wis.2d 119, 123, 280 N.W.2d 765 (1979); *Wilson v. Continental Insurance Cos.,* 87 Wis.2d 310, 316–18, 274 N.W. 2d 679 (1979).

Initially we must comment that the second amended complaint cannot be characterized as a model of good draftsmanship. It is vague and gives only a bare-bone statement of facts. We are not told the age of the deceased child, the circumstances of the death or the circumstances of the autopsy. Nevertheless, construing pleadings liberally, we conclude that the complaint states a claim upon which relief may be granted.

Although the complaint separates the allegations into four causes of action and an alternative cause of action, for purposes of determining whether the complaint states a claim the complaint should be treated as if it charges essentially three wrongs: (1) The body of the plaintiffs' child was mutilated by the negligent or intentional conduct of the defendants in the manner of conducting the

autopsy once undertaken;[5] (2) the body of the plaintiffs' child was mutilated by an autopsy which was performed without the consent of the plaintiffs and under circumstances that were not such as to give rise to the defendants' statutory authority to conduct an autopsy; and (3) the body of the plaintiffs' child was mutilated by an autopsy which was performed by reason of the medical examiner's mistaken judgment and bad faith.

## II.

Before we discuss each of the three wrongs, we must turn first to consider the nature of the cause of action of the next of kin of the decedent against one who mutilates the body of the decedent; the duties and powers of the medical examiner; and sec. 895.43 (4), Stats., governing

[5] Construing the complaint liberally as we must, we believe the complaint can be read to state a claim that the body was mutilated because of the negligent (or intentional) conduct of the defendants while performing the autopsy. Although we concede that it is arguable that all the allegations relate to the plaintiffs' theory that defendants performed the autopsy without authority of law, the second of the above-listed wrongs, we base our interpretation on several allegations of the complaint. In the fifth paragraph of the "first cause of action" the complaint states that there was "intrusion and defiling of the body." In the second paragraph of the "second cause of action" it is alleged that the appellants' "conduct in performing said autopsy was done unreasonably and not in good faith." The fourth paragraph of the "third cause of action" claims that "the body of Nicole Scarpaci was defiled which resulted in a great outrage upon the sensibilities and emotions" of the plaintiffs. In the second paragraph of the "fourth cause of action" the plaintiffs state that the defendants' "conduct in performing said autopsy and also in failing to notify plaintiffs of said autopsy was done negligently, unreasonably and not in good faith." The exhibits which are attached to and are part of the complaint describe the autopsy as "unlawful and improper" and that it left the child in "a disfigured condition . . . [with] a scar from one ear to the other across the top of her head."

immunity of public officers and government entities from tort liability.

### A.

The law is clear in this state that the family of the deceased has a legally recognized right to entomb the remains of the deceased family member in their integrity and without mutilation. Thus the next of kin have a claim against one who wrongfully mutilates or otherwise disturbs the corpse. This issue was settled in Wisconsin in 1905 in the case of *Koerber v. Patek*, 123 Wis. 453, 102 N.W. 40 (1905), in which this court recognized the interest of the living in the bodies of the dead, saying:

". . . We can imagine no clearer or dearer right in the gamut of civil liberty and security than to bury our dead in peace and unobstructed; none more sacred to the individual, nor more important of preservation and protection from the point of view of public welfare and decency. . . ." 123 Wis. at 463.

The basis for recovery of damages is found not in a property right in a dead body but in the personal right of the family of the deceased to bury the body. The mutilating or disturbing of the corpse is held to be an interference with this right and an actionable wrong.

The law is not primarily concerned with the extent of physical injury to the bodily remains but with whether there were any improper actions and whether such actions caused emotional or physical suffering to the living kin. The tort rarely involves pecuniary injury; the generally recognized basis of damages is mental suffering.[6]

---

[6] For a discussion of the rights of the next of kin to bury the body, *see* Prosser, *The Law of Torts* sec. 12, p. 58, sec. 54, pp. 329–330 (4th ed. 1971); Jackson, *The Law of Cadavers* ch. VI (2d ed. 1950); 1 Harper & James, *The Law of Torts* sec. 9.4, pp. 674–

In *Koerber v. Patek, supra,* the defendant argued that even though a cause of action existed only nominal damages could be recovered because if the plaintiffs suffered any pecuniary loss it was trifling. The court acknowledged that plaintiffs' damage was not pecuniary or physical but was mental suffering. The court noted that the complaint alleged that the defendant had willfully mutilated the body by cutting out, removing and carrying away the stomach, and the court concluded, after an extensive review and analysis of the Wisconsin cases, that a willful invasion of the relatives' right to bury the body is one of those torts for which damages for injury to feelings are recoverable as an independent element. 123 Wis. at 469.

Because *Koerber* involved a complaint alleging intentional misconduct, the court was not faced with the issue of a cause of action for negligent mutilation or negligent disturbance of the body. The court did, however, apparently recognize that a cause of action exists for a negligent act,[7] but that where the complaint alleges a negligent act and only injury to the feelings of the survivors, there may be no recoverable damages in Wisconsin.[8]

---

676 (1956); *Hamilton v. Chaffin,* 506 F.2d 904, 910–911 (5th Cir. 1975); *Rupp v. Jackson,* 238 So.2d 86, 89 (Fla. 1970); *Hendriksen v. Roosevelt Hospital,* 297 F. Supp. 1142, 1144 (S.D.N.Y. 1969); *Lashbrook v. Barnes,* 437 S.W.2d 502 (Ky. 1969); *Hovis v. City of Burns,* 243 Ore. 607, 415 P.2d 29, 31 (1966); Annot., *Liability for Performing an Autopsy,* 83 A.L.R.2d 955 (1962).

[7] 4 *Restatement of Torts* (Second) sec. 868 (1977) provides:

"One who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body."

[8] Dean Prosser, in *Law of Torts,* sec. 54, pp. 328–330 (4th ed. 1971), discusses the recovery of damages for mental anguish resulting from negligent mishandling of corpses as follows:

In the instant complaint the plaintiffs allege in the alternative that the defendants' conduct was either negligent or intentional.

"Where the defendant's negligence causes only mental disturbance, without accompanying physical injury or physical consequences, or any other independent basis for tort liability, there is still general agreement that in the ordinary case there can be no recovery.

". . .

"In only two groups of special cases has there been any tendency to break away from the settled rule, and to allow recovery for mental disturbance alone. In one of them a respectable minority of the courts allow recovery against a telegraph company for the negligent transmission of a message, such as one announcing death, which indicates upon its face that there is an especial likelihood that such mental distress will result. . . . The other group of cases has involved the negligent mishandling of corpses. Here the older rule denied recovery for mere negligence, without circumstances of aggravation. There are by now, however, quite a series of cases allowing recovery for negligent embalming, negligent shipment, or running over the body, and the like, without such circumstances of aggravation, which now are in the majority. *What all of these cases appear to have in common is an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious.* There may perhaps be other such cases. Where the guarantee can be found, and the mental distress is undoubtedly real and serious, there is no essential reason to deny recovery. But cases will obviously be rare in which 'mental anguish,' not so severe as to cause physical harm, will be so clearly a serious wrong worthy of redress, or sufficiently attested by the circumstances of the case." (Emphasis supplied.)

Comment *a* to sec. 868, 4 *Restatement of Torts* (Second) (1977), quoted in note 7 *supra*, explains that the tort of interference with the body of a dead person does not fit well into the category of interference with a property right, and is in reality a cause of action for mental distress. Sec. 868 does not require a showing of physical harm and permits damages to be recovered for mental distress. However recovery is also allowed for physical harm resulting from mental distress.

The South Dakota Supreme Court in *Chisum v. Behrens*, 283 N.W.2d 235 (S.D. 1979), refused to follow sec. 868 of the Restate-

This court still distinguishes between intentional and negligent infliction of emotional distress. In *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 694, 271 N.W.2d 368 (1978), we summarized the rule as follows:

"In negligent torts, mental distress is compensable only when there is an accompanying or resulting physical injury. *Ver Hagen v. Gibbons*, 47 Wis.2d 220, 177 N.W. 2d 83 (1970). In intentional torts, substantial other damages in addition to damages for emotional distress are required. *D.R.W. Corp. v. Cordes*, 65 Wis.2d 303, 222 N.W.2d 671 (1974). Where the tort is specifically that of the intentional infliction of emotional distress, no other damages need be alleged or proved. . . ."

Because the complaint in the instant case asserts that the defendants' negligent or intentional interference with the right of the parents to bury the body caused the plaintiffs both great emotional distress and physical injuries, we conclude that the complaint is sufficient to survive the initial test of a motion to dismiss.

The defendants argue that *Koerber v. Patek*, which held that a cause of action was stated for mutilation of the corpse, is inapposite to the case at bar, because that case involved a private individual performing an autopsy and the present case involves a public officer who is empowered to perform autopsies and who is granted immunity from personal liability by statute.

ment. The court held that where there was negligent rather than willful interference with the body damages for mental anguish cannot be sustained where there has been no accompanying physical injury. *See also, Golston v. Lincoln Cemetery, Inc.*, 573 S.W.2d 700 (Mo. Ct. App. 1978), where the court held that the mortuary's conduct was outrageous and reckless causing severe emotional distress under sec. 46 of the Restatement and allowed recovery for mental anguish. One judge concurred, stating that the conduct was negligent, and he would allow recovery for mental anguish. .

The starting points for analysis of a claim of immunity by the Milwaukee county medical examiners and Milwaukee county are the statutes setting forth the duties and powers of the medical examiner and the statutes, specifically sec. 895.43(4), governing immunity of public officers and governmental entities from tort liability.

### B.

The medical examiner's authority to perform an autopsy is limited by statute. Absent a statutory basis for an autopsy, the medical examiner has no power to conduct or order an autopsy.[9]

The Milwaukee county medical examiner is appointed by the county board of supervisors, pursuant to sec. 59.34 (1), Stats.; the constitution abolished the elective office of coroner in Milwaukee county.[10] The legislature has

---

[9] In *Schultz v. Milwaukee County*, 245 Wis. 111, 115, 13 N.W. 2d 580 (1944), this court held that the jurisdiction of the coroner to hold inquests is not, under the law of this state, one of the distinctive and characteristic duties attached to the office and that therefore the legislature could regulate the coroner's conducting of inquests and transfer the duties to another officer (namely the Milwaukee County medical examiner). Although autopsies are not mentioned in the opinion, inquests and autopsies are interrelated and the opinion can be read to include autopsies. The import of the *Schultz* case is that the office of the coroner and medical examiner do not have inherent powers over inquests and autopsies; the powers are derived from statute. The court in *Schultz* traced the statutes relating to inquests from the 1839 territorial statutes to the date of the case. Each statute limited inquests to particular circumstances, *e.g.*, where it is supposed that death was caused by violence, or death was caused by violence or casualty, or that murder or manslaughter was committed. Sec. 979.121, Stats., empowering coroners to conduct autopsies, was enacted in 1945. Ch. 198, Laws of 1945. *See* note 12 *infra*.

For a discussion of the predecessor of chapter 979, *see* Comment, *The Wisconsin Coroner System*, 1951 Wis. L. Rev. 529.

[10] Art. VI, sec. 4, Wis. Const., abolished the elective office of

provided in sec. 979.15, Stats., that the Milwaukee county medical examiner shall perform all the duties mentioned in secs. 979.01 through 979.14, Stats.[11] Secs. 979.01 through 979.14, Stats., relate to the powers and duties of the coroner in regard to inquests and autopsies. Accordingly we can substitute the phrase medical examiner for the word coroner in secs. 979.01–979.14. *Mohrhusen v. McCann,* 62 Wis.2d 509, 515–517, 215 N.W.2d 560 (1974).

Sec. 979.121, Stats., grants the medical examiner the authority to conduct an autopsy or order an autopsy upon the body of a dead person "in cases where a coroner's inquest might be had as provided in s. 979.01 notwithstanding that no such inquest is ordered or had."[12] The legislature has thus provided that the circumstances under which a medical examiner can perform an autopsy are exactly the same as those under which an inquest can be held. We must therefore turn to sec. 979.01 which specifies the circumstances under which an inquest can be held.[13] An inquest can be held under sec. 979.01,

coroner in Milwaukee, a county having a population of 500,000 or more.

[11] Sec. 979.15, Stats., provides:

"Inquests. In each county whose inhabitants exceed in number 500,000 and all counties instituting a medical examiner system all the duties mentioned in the foregoing sections of this chapter shall be performed by the medical examiner appointed pursuant to s. 59.34(1), who is hereby invested with the exclusive jurisdiction and power to take inquests therein, and in case of the inability of the medical examiner to attend to such duties the medical examiner may deputize one of his assistants to conduct the inquest."

[12] Sec. 979.121, Stats., provides:

"Autopsies. The coroner may conduct an autopsy or order the conducting of an autopsy upon the body of a dead person any place within the state and disinter the body if necessary in cases where a coroner's inquest might be had as provided in s. 979.01 notwithstanding that no such inquest is ordered or had."

[13] Sec. 979.01, Stats., provides:

"Inquests. Whenever the district attorney has notice of the death of any person and from the circumstances surrounding the

Stats., and therefore the medical examiner can conduct or order an autopsy, whenever, from the circumstances surrounding the death, there is any reason to believe that death may have been due to murder, manslaughter, homicide resulting from negligent control of vicious animal, homicide by reckless conduct, homicide by negligent use of vehicle or firearm, homicide by intoxicated use of vehicle or firearm, self-murder, or unexplained or suspicious circumstances.

The legislature has also empowered the medical examiner to conduct or order an autopsy if the body is to be cremated. Sec. 979.19(2), (5), Stats., provides that it is the duty of the medical examiners where the body is to be cremated "to make a careful personal inquiry into the cause and manner of death, and conduct an autopsy or order the conducting of an autopsy, if in their opinion it is necessary to determine the cause and manner of death."[14]

---

same there is any reason to believe that murder, manslaughter, homicide resulting from negligent control of vicious animal, homicide by reckless conduct, homicide by negligent use of vehicle or firearm, or homicide by intoxicated user of vehicle or firearm may have been committed, or that death may have been due to self-murder or unexplained or suspicious circumstances, and the venue of such offense is in his county, excepting in cases where a criminal warrant has been issued, he shall forthwith order and require the coroner or deputy coroner to make an inquest as to how the person came to his death. In any inquest ordered by the district attorney he shall appear in the inquest representing the state in presenting the evidence. For the purpose of taking the inquest, deputy coroners may perform all the duties and exercise all the jurisdiction and powers conferred upon coroners by this chapter and shall be entitled to the same fees as the coroner for the performance of like duties. Nothing herein contained shall be construed as preventing such coroner from holding an inquest under the circumstances hereinabove specified without being first notified by the district attorney to hold such inquest. Such inquest may be held in any county, if within this state, in which there would be venue for the trial of the offense."

[14] Sec. 979.19(2), (5), Stats., provides:

"(2) It shall be the duty of the respective coroners of this state,

Secs. 979.121 (which incorporates the provisions of sec. 979.01, Stats.) and 979.19(2), Stats., were the only statutes at the date of the instant autopsy[15] empowering the medical examiner to conduct or order an autopsy without the consent of the next of kin.[16] If the body is

in any case where the body is to be cremated, to make a careful personal inquiry into the cause and manner of death, and conduct an autopsy or order the conducting of an autopsy, if in their opinion it is necessary to determine the cause and manner of death, and thereupon certify that no further examination or judicial inquiry concerning the same is necessary, if so satisfied, otherwise, or in the event of doubt to proceed as otherwise provided by law.

". . .

"(5) All the powers and duties granted to or imposed upon the coroner or his deputy in this section are vested in the medical examiner appointed under s. 59.34(1), except that said medical examiner shall not be entitled to the fees provided by sub. (3)."

[15] Sec. 979.125, Stats., which became effective after the date of the instant autopsy, provides:

"**Autopsy for sudden infant death syndrome.** If a child under the age of 2 years dies suddenly and unexpectedly under circumstances indicating that the death may have been caused by sudden infant death syndrome, the coroner or medical examiner shall notify the child's parents or guardian that an autopsy will be performed, at no cost to the parents or guardian, unless the parents or guardian object to the autopsy. The coroner or medical examiner shall conduct or shall order the conducting of an autopsy at county expense, unless parent or guardian requests in writing that an autopsy not be performed. If the autopsy reveals that sudden infant death syndrome is the cause of death, that fact shall be so stated in the autopsy report. The parents or guardian of the child shall be promptly notified of the cause of death and of the availability of counseling services."

[16] Except for secs. 979.01, 979.121, 979.19(2) and 979.125, we could find no statute empowering the medical examiner to conduct or order an autopsy. Sec. 979.20, Stats., for example, specifies the circumstances under which certain deaths must be reported to the medical examiner, and the statute authorizes the medical examiner, in the event of such reported deaths, to take specimens, body fluids and other material to assist him in determining the cause of death if an autopsy is not performed. The statute does not expressly authorize the performing of an autopsy in the event of all such reported deaths.

not to be cremated and if the medical examiner has no reason to believe that death was caused by circumstances set forth in sec. 979.01, Stats., the medical examiner has no power to conduct or to order an autopsy.

The medical examiner is thus not empowered in Wisconsin to conduct an autopsy to inquire into the cause and manner of every death in this state. However well-motivated may be the medical examiner, and however significant may be the result of his autopsy to medical science, the medical examiner's power to conduct an autopsy is limited by law to specified circumstances. The law protects the feelings and emotions of the next of kin by not allowing interference with the body by government officials except in certain specified circumstances.

### C.

The defendants argue that the motion to dismiss in the case at bar must be granted because their acts are done in the exercise of quasi-judicial functions, and that sec. 895.43(4), Stats., renders them immune from suit.

Sec. 895.43(4), Stats., states:

"No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or *quasi-judicial* functions." (Emphasis supplied.) [17]

---

[17] We shall use the phrase public officer to include "officers, officials, agents or employes" as used in sec. 895.43(4), Stats.

Compare secs. 895C and 895D, 4 *Restatement of Torts* (Second) (1977) which provide as follows:

"Sec. 895C. **Local Government Entities**

Immunity for certain acts of municipal governmental units and of municipal officers predates sec. 895.43 (4), Stats. The doctrine of municipal governmental immunity was engrafted upon the law of Wisconsin by judicial decision early in our state's history and was abrogated by judicial decision in 1962 in *Holytz v. Milwaukee*, 17 Wis. 2d 26, 39, 115 N.W.2d 618 (1962).[18] However, in *Holytz, supra*, 17 Wis.2d at 40, we stated that the abrogation of municipal governmental immunity "is not to be interpreted as imposing liability on a governmental body in the exercise of its legislative or judicial or quasi-legislative or quasi-judicial functions."

"(1) Except as stated in Subsection (2), a local government entity is not immune from tort liability.

"(2) A local governmental entity is immune from tort liability for acts and omissions constituting

"(a) the exercise of a legislative or judicial function, and

"(b) the exercise of an administrative function involving the determination of fundamental governmental policy.

"(3) Repudiation of general tort immunity does not establish liability for an act or omission that is otherwise privileged or is not tortious."

"Sec. 895D. **Public Officers**

"(1) Except as provided in this Section a public officer is not immune from tort liability.

"(2) A public officer acting within the general scope of his authority is immune from tort liability for an act or omission involving the exercise of a judicial or legislative function.

"(3) A public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if

"(a) he is immune because engaged in the exercise of a discretionary function,

"(b) he is privileged and does not exceed or abuse the privilege, or

"(c) his conduct was not tortious because he was not negligent in the performance of his responsibility."

[18] For a discussion of the development of tort immunity for municipal governments, *see Owen v. City of Independence*, — U.S. —, 63 L. Ed.2d 772, 100 S. Ct. 1398 (1980).

682

The doctrine of immunity of municipal officers from civil liability also evolved in the common law of this state by judicial decision. This doctrine was developed on grounds of public policy, namely to protect public officers from being unduly hampered or intimidated in the discharge of their functions by threat of lawsuit or personal liability. *Lister v. Board of Regents,* 72 Wis.2d 282, 299, 240 N.W.2d 610 (1976).[19]

The language which we used in *Holytz* exempting municipal governmental units from liability for "quasi-judicial" functions has been incorporated by the legislature into sec. 895.43(4), which relates to immunity from tort liability for both governmental units and public officers.

The plaintiffs apparently agree with the defendants that the medical examiner's decision to conduct or order an autopsy is a quasi-judicial function, but the plaintiffs contend that sec. 895.43(4) does not render the medical

[19] ". . . The immunity afforded public officers with respect to the performance of their official functions, on the other hand, is a substantive limitation on their personal liability for damages and is common law. It does not derive, as the language in some cases would imply, from the state's sovereign immunity under art. IV, sec. 27 of the Wisconsin Constitution, but from considerations of public policy. These considerations have been variously identified in the cases as follows: (1) The danger of influencing public officers in the performance of their functions by the threat of lawsuit; (2) the deterrent effect which the threat of personal liability might have on those who are considering entering public service; (3) the drain on valuable time caused by such actions; (4) the unfairness of subjecting officials to personal liability for the acts of their subordinates; and (5) the feeling that the ballot and removal procedures are more appropriate methods of dealing with misconduct in public office." *Lister v. Board of Regents,* 72 Wis.2d 282, 299, 240 N.W.2d 610 (1976). The *Lister* case involved state officers, not municipal officers, but the concepts and theories set forth in the case are applicable to both types of officers. *See* note 20 *infra.*

examiner immune in all circumstances from personal tort liability as to all his acts in conducting or ordering an autopsy.

On the basis of our prior cases we conclude, as did the parties, that the medical examiner's discretion in determining whether to conduct or order an autopsy can be classified as a quasi-judicial function for purposes of sec. 895.43(4), Stats. In *Lifer v. Raymond,* 80 Wis.2d 503, 512, 259 N.W.2d 537 (1977), which involved the issuance of a motor vehicle driver's license by a state officer, we said that "[a] quasi-judicial act involves the exercise of discretion and judgment in the application of a rule to specific facts. . . . As applied, the terms 'quasi-judicial or quasi-legislative' and 'discretionary' are synonymous and the two tests result in the same finding."[20] In *Coffey v. Milwaukee,* 74 Wis.2d 526, 533–34, 247 N.W.2d 132 (1976), we described an act as quasi-judicial in nature if it involves essentially judicial procedures such as notice, hearing, exercise of discretion and a decision on the record.

---

[20] In *Lifer v. Raymond,* 80 Wis.2d 503, 511–512, 259 N.W.2d 537 (1977), we indicated that the test for the immunity of a state officer is similar to the test for the immunity of a municipal officer under sec. 895.43(3), Stats. Sec. 895.43, Stats., is not applicable to the state or state officers. *Townsend v. Wisconsin Desert Horse Ass'n,* 42 Wis.2d 414, 423, 167 N.W.2d 425 (1969).

The draftsmen of the Restatement of Torts apparently distinguish between quasi-judicial functions and discretionary functions. *See* sec. 895D, quoted at note 17, *supra,* and comments *c* and *f,* 4 *Restatement of Torts* (Second) 413, 415–417 (1977). *See also Gildea v. Ellershaw,* 363 Mass. 800, 298 N.E.2d 847, 859–860 (Mass. 1973), which recognizes that public officers are armed with the authority and charged with responsibility for making decisions which are judgmental and discretionary for which they should not be subject to liability but that the decisions may not be judicial or

This court has held that the district attorney's decision whether to order an inquest under sec. 979.01, Stats., is based on his subjective determination that there is reason to believe the requisite circumstances exist. We characterized the district attorney's discretion as quasi-judicial in *State ex rel. Kurkierewicz v. Cannon,* 42 Wis. 2d 368, 378, 381–383, 166 N.W.2d 255 (1969), and in *Mohrhusen v. McCann,* 62 Wis.2d 509, 512, 215 N.W.2d 560 (1974). Because the medical examiner has authority under sec. 979.121, Stats., to conduct or order an autopsy in the same circumstances in which an inquest can be ordered under sec. 979.01, Stats., applying the reasoning of *Kurkierewicz* and *Mohrhusen,* we conclude that the medical examiner's decision concerning an autopsy must also be based on his subjective determination that there is reason to believe the requisite circumstances exist.[21] It is clear that the legislature envisioned the medical examiner as making inquiry into the facts, applying the statutes to the facts, and making a decision whether to proceed with an autopsy on the basis of the medical examiner's subjective evaluation of the facts and the law.

quasi-judicial in nature. *See* Comment, *The Discretionary Function Exception to Government Tort Liability,* 61 Marq. L. Rev. 163 (1977).

[21] *Kurkierewicz* and *Mohrhusen* do not, as the defendants would have us believe, stand for the proposition that because the function of the medical examiner as to autopsies is labeled quasi-judicial, the medical examiner's authority over autopsies is unlimited and not reviewable by a court. On the contrary, we conclude in this tort suit, as we concluded in these two cases which were before the court on petitions for a writ of mandamus or prohibition, that the legislature has limited the jurisdiction and the discretion of the medical examiner to conduct or order an autopsy. *See* p. 17, *infra.*

This discretion conferred by the statutes upon the medical examiner to conduct or order an autopsy can be characterized as quasi-judicial under sec. 895.43(4), Stats.

## III.

Turning to the first of the three wrongs alleged in the complaint, we must determine whether the defendants are immune from tort suit for alleged misconduct during an autopsy causing mutilation of the body.[22]

Although the decision whether to conduct or order an autopsy is quasi-judicial, not every act of the medical examiner relating to an autopsy is necessarily classified as quasi-judicial for which the examiner is immune from personal liability. The court must inquire into the nature of the alleged wrongful act to determine if the particular act in question is quasi-judicial. We said that it is the categorization of the specific act upon which liability is based and not the categorization of the general duties of the public officer which dictates whether or not the officer is immune from liability under sec. 895.43(4), Stats.

In *Coffey v. Milwaukee,* 74 Wis.2d 526, 247 N.W.2d 132 (1976), county and city officials argued that the overall enforcement of a building code is quasi-judicial in nature, that the physical inspection of a building is a quasi-judicial act and that public employees could not be

---

[22] We should point out that a claim based on negligence can be asserted against the individual defendants and against the county defendant; a claim based on an intentional tort cannot be asserted against the county. Sec. 895.43(4), Stats., provides that "No suit may be brought against any . . . political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees . . . ."

held liable for negligence in failing to inspect premises and discover defects. This court held that the actual inspection did not involve essential judicial procedures such as notice, hearing, exercise of discretion and a decision on the record. The court said that the duty to inspect was statutory and that no essentially judicial procedures were accorded to the building owner or were to be performed by the inspector during the actual inspection. Because the inspector was not performing a quasi-judicial act he was not immune from tort liability for his alleged negligence.

Similarly, in *Chart v. Dvorak,* 57 Wis.2d 92, 203 N.W. 2d 673 (1973), we pointed out that once a legislative or quasi-legislative decision is made, which decision in itself would be immune from the imposition of tort liability, the officer who made the decision may nevertheless be subject to liability as a public officer for breach of a ministerial (not quasi-legislative) duty imposed by that decision.

As we said previously, the complaint in the instant case can be read to state a claim against the defendants for misconduct in the manner in which the autopsy was performed. We do not think the doctrine of immunity has application to this type of tort because the actual performance of an autopsy, although involving judgment and discretion, does not involve the judgment and discretion encompassed in the term "quasi-judicial" as used in sec. 895.43 (4), Stats.

The defendants' acts in performing the actual procedure of an autopsy are discretionary in nature, but the discretion is medical, not governmental. The theory underlying the creation of immunity for government officials is that immunity will foster the fearless, vigorous and effective administration of policies of the government. That theory is not applicable to the exercise of normal medical discretion during an autopsy. The theory

behind immunity for quasi-judicial decisions does not dictate an extension of the immunity to cover the medical decisions of medical personnel employed by a governmental body.

The Comments in the *Restatement of Torts* (Second) (1977) relating to government immunities, explain the concept of governmental and non-governmental discretion as follows:

"It is only when the conduct involves the determination of fundamental governmental policy and is essential to the realization of that policy, and when it requires 'the exercise of basic policy evaluation, judgment and expertise' that the immunity should have application . . . . The purpose of the immunity is 'to insure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government . . . [if] such a policy decision, consciously balancing risks and advantages, took place.'" *See* Comment *d.* to sec. 895B, p. 403; Comment *g.* to sec. 895C, p. 410; Comment *d.*, sec. 895D, p. 413, 4 *Restatement of Torts* (Second) (1977).

The Tenth Circuit Court of Appeals recently had occasion to rule on a claim similar to that involved here. It held that an Air Force physician was not immune from liability for negligence in the treatment of the plaintiff, explaining:

"We recognize that medical treatment involves judgment and discretion. This does not resolve the matter, however, because medical treatment by a government doctor does not necessarily involve governmental discretion . . . . [T]he type of discretion necessary to immunize official conduct must be governmental not medical discretion." *Jackson v. Kelly,* 557 F.2d 735, 738–39 (10th Cir. 1977).

*Compare Martinez v. Schrock,* 537 F.2d 765 (3d Cir. 1976).

Thus we hold that the claim for misconduct in the manner in which the autopsy was performed is not barred by sec. 895.43 (4), Stats., because the claim is not based on acts that are of a quasi-judicial nature.

## IV.

We turn now to the second of the wrongs set forth in the complaint, namely that the autopsy was "unauthorized" and "in violation of Wisconsin Statutes 979.121 in that there was no reason to believe from the surrounding circumstances that a situation was present where a coroner's inquest might be had as provided in 979.01."

The defendants, in their briefs and in oral argument, assert that this allegation states a legal conclusion, not facts. In the defendants' view the complaint states no facts showing that the performance of the autopsy was outside the defendants' statutory authority. At oral argument, the defendants pointed out that the complaint had no allegations, for example, that the autopsy was performed for purposes of medical research or for purposes of self-edification, both purposes being beyond the statutory limitations on the defendants' authority to conduct an autopsy.

We agree with the defendants that the assertion that the defendants acted "in violation of Wisconsin Statutes 979.121," states a legal conclusion. However we disagree with the defendants that the allegation that "there was no reason to believe from the surrounding circumstances that a situation was present where a coroner's inquest might be had as provided in 979.01" states a legal conclusion. This allegation is one of fact as can be better understood by turning again to ch. 979, Stats., which sets forth the powers and duties of the medical examiner. As we stated previously, secs. 979.01 and 979.121, Stats.,

limit the medical examiner's power to perform autopsies to those circumstances in which the medical examiner has any reason to believe that death may have been due to, inter alia, murder, manslaughter, or unexplained or suspicious circumstances. It is apparent from an examination of the statute that the medical examiner has no authority to conduct an autopsy unless he has reason to believe a circumstance described in the statute exists.

Plaintiffs' allegation that there was no reason to believe that a situation was present where a coroner's inquest could be had as provided in sec. 979.01 is as much of a factual allegation as would be an allegation that there was no reason to believe a murder had taken place, that there was no reason to believe manslaughter had occurred, and so forth. That plaintiffs used a catch-all allegation rather than negativing individually all of the circumstances listed in sec. 979.01 does not make their allegation a legal conclusion. We read the allegation as if it negatives all of the circumstances listed in sec. 979.01. Thus the complaint is read to include the allegation that the defendants had no reason to believe that the death may have been due to "unexplained or suspicious circumstances." Reading the complaint in this manner is troublesome because negativing an "unexplained" death is, in effect, intimating that the cause of death is known. The complaint, however, does not state that the cause of death is known; it does not set forth the cause of death or the circumstances of the death. But the plaintiffs are not required to plead all the facts that they may have to prove at trial to recover damages.

The reasonable factual inferences to be drawn from the summary factual allegation that the medical examiner had no reason to believe any of the 979.01 circumstances existed are that the medical examiners conducted the autopsy even though (1) they reached no subjective determination whether there was any reason to believe that death was due to any of the circumstances

listed in sec. 979.01, Stats.; or (2) they reached the subjective determination that there was no reason to believe that death was due to any of the circumstances listed in sec. 979.01, Stats. The question is whether the complaint as so interpreted states a claim.

As we have previously stated, sec. 979.01, Stats., and sec. 979.121, Stats., read together, provide that the medical examiner may order an autopsy if "there is any reason to believe . . . that death may have been due to . . . unexplained or suspicious circumstances." Prior to an amendment several years ago, the statute read "any *good* reason."

This court has not interpreted the language "any reason to believe" in relation to autopsies or to medical examiners or to tort cases, but we have interpreted the language in relation to the district attorney of Milwaukee county, inquests, and judicial review of the decisions of the district attorney. *See State ex rel. Kurkierewicz v. Cannon,* 42 Wis.2d 368, 166 N.W.2d 255 (1969) and *Mohrhusen v. McCann,* 62 Wis.2d 509, 215 N.W.2d 560 (1974). Our interpretation of the language "any reason to believe" in *Kurkierewicz* and *Mohrhusen* is applicable to interpreting the powers of the medical examiner in ordering or conducting an autopsy. We held in those cases that the legislature did not intend to set an objective standard of what constitutes a sufficient reason for the medical examiner to believe that certain circumstances existed. Rather the legislature intended the medical examiner to make a subjective determination. A subjective determination "is not to say that his decision may rest upon prejudice or caprice. Discretion of a limited nature is conferred upon him by this statute, and there must be evidence that discretion was in fact exercised." *State ex rel. Kurkierewicz, supra,* 42 Wis.2d at 384. *See* pp. 11–12, *supra.*

Although we have looked to the *Kurkierewicz* and *Mohrhusen* cases to aid us in interpreting the powers

and jurisdiction of the medical examiner in the instant case, these cases are not completely applicable to the instant case. Where the suit calls upon the courts to review the propriety of administrative or judicial action the question of the proper relation between branches of government or between trial courts and appellate courts is encountered. When a personal tort suit is brought against an individual administrative or judicial officer, the court must make a value judgment between (1) the social and individual good derived from imposing tort liability, namely compensating the victim and deterring public officers from misconduct, and (2) the disadvantages derived from imposing tort liability, namely inhibiting forthright and independent action by public officers and deterring responsible citizens from taking positions with government.

The rights and obligations of plaintiffs and defendants in a suit for declaratory judgment or for a writ of prohibition or mandamus may be different from their rights and obligations in a tort suit. This court, may, for example, conclude in an action for a writ that an act of a public officer is invalid for various reasons. Nevertheless the public officer is not necessarily subject to tort liability for such an invalid act. We expressed a similar idea in *Lister v. Board of Regents,* 72 Wis.2d 282, 304, 240 N.W.2d 610 (1976), when we said:

"[A] finding that certain allegations are sufficient to overcome the procedural impediment to maintaining declaratory judgment actions against the state should not control the consideration of whether the officer's conduct is outside his jurisdictional authority for the purpose of removing the substantive bar to personal liability for damages. An officer's immunity from liability for damages does not affect his amenability to suit for declaratory or injunctive relief. The public policy considerations which have prompted the courts to grant the substantive immunity do not apply with equal force to actions for such relief."

The defendants urge that even if they reached no subjective determination whether there was any reason to believe that death was due to any of the circumstances listed in sec. 979.01, Stats., or even if they reached the subjective determination that there was no reason to believe that death was due to any of the circumstances listed in sec. 979.01, Stats., they are immune from tort liability under sec. 895.43(4), Stats. The trial court properly denied this contention, stating that "[t]he fallacy in the defendants' motion to dismiss at this time is that [quasi-] judicial immunity is not so broad as to constitute immunity to any kind of a circumstance."

The trial court's construction of sec. 895.43(4), Stats., conforms to the language of sec. 895.43, and to the common law. Sec. 895.43(1), (3), and (5), Stats., governs actions against the municipal government entity or against public officers "for acts done in their official capacity or in the course of their agency or employment." This language would indicate that sec. 895.43(4), Stats., renders the municipal government entity and public officers immune for acts done in the exercise of quasi-judicial functions only if the acts were done by public officers "in their official capacity or in the course of their agency or employment."

The common law rule is that when a public officer acts outside his jurisdiction, that is, acts in clear absence of all jurisdiction, he is liable for his acts just as is any private individual, and he is not entitled to protection because of his office. This court, like other courts, has made a distinction between those acts which are outside the officer's jurisdiction or authority and those acts which constitute negligence or a mistake of judgment within the officer's lawful jurisdiction. In *Pavlik v. Kinsey*, 81 Wis.2d 42, 49, 259 N.W.2d 709 (1977), we explained the general rule of immunity of a public officer in this state as follows:

"The general rule of public officer immunity, as long understood in this state, has recently been restated by this court in *Lister v. Board of Regents,* 72 Wis.2d 282, 300, 240 N.W.2d 610 (1976). We said therein:

" 'The general rule is that a public officer is not personally liable to one injured as a result of an act performed within the scope of his official authority and in the line of his official duty.' "[23]

The immunity of public officers who perform quasi-judicial functions is, to a large extent, based on the same public policy which grants immunity to judicial officers. The governing principle applicable to judges is that the judge is subject to tort liability for acts outside the

---

[23] In *Gildea v. Ellershaw,* 363 Mass. 800, 298 N.E.2d 847, 858 (Mass. 1973), the Supreme Judicial Court of Massachusetts set forth the following rule as to the tort liability of non-judicial officers:

"[W]e hold that the law of the Commonwealth should be, and therefore is, that if a public officer, other than a judicial officer,[13] is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority and jurisdiction, he is not liable for negligence[14] or other error in the making of that decision, at the suit of a private individual claiming to have been damaged thereby. This rule is presently limited to public officers acting in good faith, without malice and without corruption. This limitation is dictated by a comparable limitation in the facts of the case which we are deciding. The plaintiff has neither alleged nor produced evidence that the defendants acted in bad faith, maliciously or corruptly.

"[13] The sole reason for excluding judicial officers from the application of this rule is that under our decided cases they already enjoy absolute immunity from liability for acts within their jurisdiction. Their immunity is in no way affected by this decision.

"[14] The word 'negligence' as used in this statement is limited to the negligence of a public officer in relation to his making of an official decision involving the elements of judgment and discretion and not otherwise. For example, it clearly would not include the negligence of a public officer in the operation of a motor vehicle in the course of the performance of his official duties. See *Trum v. Paxton,* 329 Mass. 434, 438–439, 109 N.E.2d 116."

judge's jurisdiction and is immune from tort liability for those acts which are merely in excess of jurisdiction. The United States Supreme Court, as early as 1872, drew the line between judicial acts which are outside the judge's authority or jurisdiction and those which are merely in excess of jurisdiction, declaring:

"A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority . . . But where jurisdiction over the subject-matter is invested by law in the judge, . . . the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions . . . ." *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 351–352 (1872).

In *Pierson v. Ray,* 386 U.S. 547, 553–554 (1967), the United States Supreme Court stated that "[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their jurisdiction . . ."

Again more recently in *Stump v. Sparkman,* 435 U.S. 349, 98 S. Ct. 1099 (1978), in order to determine whether the judge was immune from personal liability for ordering sterilization of a young woman, the Court had to make the necessary inquiry into whether the judge at the time he took the challenged action had jurisdiction over the subject matter before him. The Court said that the judge will not be deprived of immunity because the judge's action "was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' 13 Wall., at 351." *Stump v. Sparkman,* 435 U.S. 349, 357, 98 S. Ct. 1099, 1105 (1978).[24] *See also, Harris v. Harvey,* 419 F. Supp.

---

[24] *Stump* is a suit under sec. 1 of the Civil Rights Acts of 1871, 42 USC sec. 1983. The United States Supreme Court has held that the common law doctrine of judicial immunity is applicable to

30 (E.D. Wis. 1976), 436 F. Supp. 143 (1977), 453 F. Supp. 886 (1978), 605 F.2d 330 (7th Cir. 1979), *cert. denied* 445 U.S. 938 (1980) ; *Butz v. Economou,* 438 U.S. 478, 508, 509 (1978) ; *Abdella v. Catlin,* 79 Wis.2d 270, 255 N.W. 2d 517 (1977) ; *Kalb v. Luce,* 234 Wis. 509, 514, 291 N.W. 841 (1940).

The immunity defense turns, therefore, on whether the autopsy was within the defendants' lawful jurisdiction or was outside defendants' jurisdiction. In other words, the question is whether the complaint states facts showing that the medical examiners' acts were merely in excess of jurisdiction or in a clear absence of all jurisdiction.[25]

We must turn again to the statutes to determine the jurisdiction of the medical examiner to perform autopsies. As we have stated previously, we construe secs. 979.01 and 979.121, Stats., to require that the medical examiner must, prior to an autopsy, make a subjective determination that there is reason to believe that any of the circumstances listed in sec. 979.01 exists. We further construe secs. 979.01 and 979.121 as making this subjective determination by the medical examiner an essential prerequisite to the jurisdiction of the medical examiner to conduct or order an autopsy. *State ex rel. Kurkierewicz v. Cannon,* 42 Wis.2d 368, 380, 166 N.W.2d 255 (1969) ; *Mohrhusen v. McCann,* 62 Wis.2d 509, 215 N.W. 2d 560 (1974). Accordingly we conclude that a medical examiner acts outside his jurisdiction when he orders or conducts an autopsy either without having made a subjective determination that there is any reason to believe that any of the statutory circumstances justifying an

sec. 1983 suits against judges. *Stump v. Sparkman, supra,* 435 U.S. at 356, 98 S. Ct. at 1104.

[25] "It is sometimes said that the officer is immune for acts that are merely 'in excess of' his authority, as distinguished from those beyond the 'outer perimeter of his line of duty.'" Comment *g,* sec. 895D, *Restatement of Torts* (Second) 418 (1977).

autopsy exists or having made a subjective determination that there is no reason to believe that any of the statutory circumstances justifying an autopsy exists.

The determination of whether the individual defendants acted outside the scope of their jurisdiction in the instant case will rest on the trial court's determining whether the medical examiner exercised his discretion and made a subjective determination that he had any reason to believe that any circumstances under sec. 979.01, Stats., existed. If the medical examiner subjectively determines that there is any reason to believe that a circumstance listed in sec. 979.01 exists, and he conducts or orders an autopsy, the medical examiner is protected against suit for his quasi-judicial decision, even if his decision that there is any reason to believe that one of the circumstances listed in sec. 979.01 exists proves to be erroneous. Thus, if the plaintiffs prove only that the medical examiner's belief that the death was unexplained or suspicious was erroneous, the plaintiffs' claim must fail. We take care in pointing out that the determination of whether the individual defendants acted outside the scope of their jurisdiction in conducting or ordering an autopsy in the instant case does not rest on the trial court's or this court's second-guessing the medical examiner as to whether in the instant case there was any reason to believe that any of the circumstances set forth in sec. 979.01, Stats., exist. It is for the medical examiner, not for the courts in a tort action against the examiner, to determine whether there is any reason to believe that the circumstances set forth in sec. 979.01, Stats., exist. Later in the opinion we discuss the issue of the tort liability of the medical examiner if he errs in determining that the specified circumstances exists and he acts with malice or in bad faith.

We read the complaint as alleging that the medical examiner ordered an autopsy either without any subjec-

tive determination as to whether there was any reason to believe that death was due to any of the circumstances listed in sec. 979.01, Stats., or despite his subjective determination that there was no reason to believe that death was due to any of the circumstances listed in sec. 979.01, Stats. The motion to dismiss must be treated as admitting these allegations for purposes of testing the complaint. We conclude that because the allegation is that the medical examiner acted outside his jurisdiction, rather than merely in excess of jurisdiction, a claim for relief is stated, and the defense of immunity under sec. 895.43 (4), Stats., is not a bar to this claim.[26]

[26] As early as 1905, this court, by way of *dicta*, recognized that the immunity of the public officer does not bar a claim against a coroner when it is based on an allegation that he acted outside his authority in ordering an autopsy. *Koerber v. Patek*, 123 Wis. 453, 102 N.W. 40 (1905), to which we made reference previously, involved an action against a private individual not against a government official for removal of the stomach during an autopsy. This court indicated that public officials performing autopsies must act within the law. After discussing the importance of the right to bury our dead in peace, we said:

". . . We recognize, of course, that public welfare may and does require governmental control in many respects for protection of life and health of the people, and for discovery of crime connected with the death of a person, and to such interests the private right is subservient so far as necessary. Upon this ground rest cases of autopsies upon dead bodies under public authority, and to satisfy police regulations for ascertainment of cause of death. *Young v. College*, 81 Md. 358, 32 Atl. 177; *Cook v. Walley*, 1 Colo. App. 163, 27 Pac. 950; *Palmer v. Broder*, 78 Wis. 483, 47 N.W. 744. *Even such authority must be exercised lawfully and reasonably. Palenzke v. Bruning*, 98 Ill. App 644." 123 Wis. at 463 (Emphasis supplied.)

In *Palenzke v. Bruning*, 98 Ill. App. 644, the last case cited in *Koerber* above, the Illinois court held that a complaint against a coroner seeking damages for an unauthorized autopsy was sufficient to withstand a demurrer. The court stated that the coroner could not justify his actions on the basis of his public office because he had no authority to direct an autopsy at his mere whim or caprice but could only direct one where a preliminary investiga-

The defendants assert that if the complaint states a claim that the autopsy was conducted outside the medical examiner's statutory authority, the plaintiffs may not recover damages from Milwaukee county. The defendants rely on sec. 895.46(1), Stats., which governs a political subdivision paying a judgment entered against a public officer. Sec. 895.46(1) states that "[w]here the defendant . . . is a public officer or employe and is proceeded against in his official capacity or is proceeded against as an individual because of acts committed while carrying out duties as an officer or employe and the jury or court finds that such defendant was acting within the scope of employment the judgment as to damages and costs entered against the officer or employe . . . shall be paid by the . . . political subdivision of which the defendant is an officer or employe."

Because the complaint does not set forth detailed facts as to the circumstances of the death or autopsy, because we have not previously interpreted the language "while carrying out duties as an officer or employe and the jury employment" as used in sec. 895.46(1), and because of the paucity of discussion of this issue in the briefs, we believe the determination of the liability of Milwaukee County under sec. 895.46(1), Stats., for the acts of a medical examiner acting outside his jurisdiction should be made at a later time by the trial court.

---

tion disclosed that death appeared to be due to violence, casualty or undue means, the language of the statute relating to the performance of autopsies.

Although apparently we have not had a case involving the issue of the public officer's tort liability in an action based on the unauthorized performance of an autopsy, the question has arisen in other jurisdictions, and our decision today appears to be in accord with decisions of those jurisdictions. *See, e.g., Gurganious v. Simpson,* 213 N.C. 613, 197 S.E. 163 (1938); *Crenshaw v. O'Connell,* 235 Mo. App. 1085, 150 S.W.2d 489 (1941); *Rupp v. Jackson,* 238 So.2d 86 (Fla. 1970).

If the plaintiffs' claim that the defendants acted outside their statutory jurisdiction is baseless, our holding does not necessarily require defendants to face a protracted trial. The defendants by affidavit may set forth undisputed facts demonstrating that their discretion was in fact exercised and that there was reason to believe there was evidence of criminal activity or of unexplained or suspicious circumstances. If the plaintiffs fail by affidavits or as otherwise provided in sec. 802.08(3), Stats., to "set forth specific facts showing that there is a genuine issue for trial, . . . summary judgment, if appropriate, shall be entered against" the plaintiffs. Sec. 802.08(3), Stats.

We refer to summary judgment not to indicate our views on the merits of making or granting such a motion, which, of course, would depend on the facts of the case, but to respond to the defendants' apparent contention that immunity is essential to save the defendants from the excessive burden of a trial, even when the defendants are acting outside the scope of their jurisdiction.

## V.

Lastly we consider the third wrong set forth in the complaint. The complaint asserts that the defendants erred in their subjective determination that there was reason to believe that one or more of the circumstances listed in sec. 979.01, Stats., justifying an autopsy existed and that the defendants are liable for their negligence, error or mistake of judgment because they acted "not in good faith." This court has not yet determined whether the immunity granted by sec. 895.43(4), Stats., to public officers for negligent acts within the scope of jurisdiction done in the exercise of quasi-judicial functions encompasses conduct which is malicious or corrupt. Although we have in several cases considered the common

law doctrine of liability of state and municipal officers for malicious or corrupt conduct, the question remains unsettled in the law of this state.

In *Abdella v. Catlin*, 79 Wis.2d 270, 279, 255 N.W.2d 517 (1977), overruling language in a prior case, we held that judges are immune from tort liability for acts which are within the scope of their jurisdiction, although erroneous and even malicious. We said that "even direct allegations of collusion and direction are not sufficient to breach the wall of judicial immunity where a judge is sued as to the acts committed in his judicial capacity . . . ."

This court has not, however, decided whether any or all government officers exercising quasi-judicial functions are immune under common law from tort liability for mistakes in judgment if there is malicious, willful or intentional misconduct on the part of the government officer. Although there is language in several cases that a government officer exercising a quasi-judicial function is immune from tort liability for error or mistake of judgment only "in the absence of a corrupt or malicious motive," this court's statements on the effect of malice on immunity have not been consistent. In some cases the court has indicated that the immunity of the officer is qualified, that is, he is personally liable if he errs and acts with a malicious motive. *See, e.g., Corrao v. Mortier,* 7 Wis.2d 494, 499, 96 N.W.2d 851 (1959) ; *Bendorf v. Darlington,* 31 Wis.2d 570, 578, 143 N.W.2d 449 (1966) ; *Allstate Ins. v. Metropolitan Sewerage Comm.,* 80 Wis. 2d 10, 17–18, 258 N.W.2d 148 (1977). But in *Wasserman v. Kenosha,* 217 Wis. 223, 226, 258 N.W. 857 (1935), a suit to recover damages from municipal officers for the cancellation of a building permit, this court held that quasi-judicial officials, "within their jurisdiction, are not liable for damages either for mistake, errors of judgment, or corrupt conduct."

In *Lister v. Board of Regents*, 72 Wis.2d 282, 302, 240 N.W.2d 610 (1976), a case not involving sec. 895.43(4), Stats., the court noting that in that particular case the complaint contained no allegation of malicious or intentional misconduct on the part of state officers, apparently reserved decision as to the effect of such an allegation. The court said that "at least in the absence of some malicious, wilful and intentional misconduct, the policy considerations underlying the immunity principle require that the officer be free from the threat of personal liability for damages resulting from mistakes of judgment." *See also Bromund v. Holt*, 24 Wis.2d 336, 344, 129 N.W.2d 149 (1964), where the court considered, but did not decide, whether public policy requires certain persons be protected from having to defend themselves against claims that they not only acted erroneously but maliciously.

The commentators note that there is a division of authority on the question whether a quasi-judicial officer should be given immunity where he does not act in good faith but rather acts with malice or for an improper purpose. The justification for granting a quasi-judicial officer "absolute immunity," that is, immunity where the officer is charged with improper motive or malice, is not to protect public officers who have in fact acted willfully and maliciously, but to protect all public officers, the innocent as well as the guilty, from the burden of a trial, which burden might intimidate all public officers and hinder them in the courageous performance of their duties. *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949).[27] The argument in favor of granting a quasi-

---

[27] The justification for this immunity, as stated by Judge Learned Hand in *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949), is that "it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen

judicial officer only a "qualified immunity," that is, an immunity only if he acts honestly and in good faith, is twofold: an officer's official immunity should not protect him from corrupt conduct and the burden and inconvenience caused to all public officers by a possible inquiry into their motives is outweighed by the need to protect the citizens from the evils of abuse of official power. Prosser, *Law of Torts,* sec. 132, p. 989 (4th ed. 1971) ; Harper & James, *The Law of Torts,* sec. 29.10 (1956) ; 3 Davis, *Administrative Law Treatise* sec. 26.04 (1958) ; Jaffe, *Suits against Governments and Officers: Damage Actions,* 77 Harv. L. Rev. 209, 218–225 (1963) ; *Barr v. Matteo,* 360 U.S. 564 (1959).

This third claim of the plaintiffs raises an important issue of statutory interpretation and public policy, namely whether the mere threat of suit on the grounds of malice would unduly inhibit the work of medical examiners and would be contrary to the public interest of fostering the free, independent, forceful discharge of the important duties of medical examiners. We believe the decision whether the medical examiner has "absolute" immunity or "qualified" immunity under sec. 895.43 (4), Stats., is better made initially, not by this court at the pleading stage, but by the circuit court upon an evidentiary record. *Cf. Coffey v. Milwaukee,* 74 Wis.2d 526, 541, 247 N.W.2d 132 (1976).[28]

---

the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. . . . In this instance it has been thought in the end better to leave unredressed the wrong done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation."

[28] *See Gildea v. Ellershaw,* quoted at note 23, where the Massachusetts court did not decide the issue of malice and noted the counterbalancing policy arguments.

We point out that a motion for summary judgment may dispose of the question of malice promptly in the instant case. *See* Davis, *Administrative Law Treatise* sec. 26.04, p. 529 (1958).

Because as we have concluded that the complaint states a claim upon which relief can be granted, we affirm the order of the circuit court.

*By the Court.*—Order affirmed.

CONNOR T. HANSEN, J. *(concurring)*. I concur with the result reached by the majority in this case. However, I am unable to join in the opinion of the court.

This is an appeal from an order denying a motion to dismiss the amended complaint. Therefore, the single issue before this court is whether the complaint states *any* claim upon which relief can be granted, and this court is not required to determine whether the complaint states more than one claim for relief. *Attoe v. Madison Pro. Policemen's Asso.,* 79 Wis.2d 199, 205, 255 N.W.2d 489 (1977). The majority determined that the complaint states a claim against the defendants for negligent or intentional misconduct in the manner in which the autopsy was performed. Once a determination was made that the complaint adequately alleges a claim for relief, it was unnecessary for the majority to address the allegations constituting the second and third claims for relief. Moreover, in discussing the sufficiency of the second and third claims for relief, the opinion sets forth an extensive review of the powers of a medical examiner and the immunity of public officers, most of which is inappropriate and unnecessary since the only issue before this court is whether the pleadings set forth any facts upon which relief can be granted.

It is my opinion that in the instant case the court should direct its attention to the issue of the appeal in considering the review of an order denying a motion to dismiss a complaint. There is no need for this court to determine whether the complaint states several claims for relief. Neither is there any necessity to expound on the legal principles relating to the various theories of

recovery alleged by the plaintiff. *Ollerman v. O'Rourke Co., Inc.,* 94 Wis.2d 17, 55, 56, 288 N.W.2d 95 (1980) (HANSEN, J., concurring opinion).

Therefore, although I concur in the result reached by the majority, I respectfully decline to join the opinion.